## Case No. 1,233.

### BEERS et al. v. PLACE et al.

[4 N. B. R. 459, (Quarto, 150;)[1] 36 Conn. 578; 4 Am. Law T. 136; 1 Am. Law T. Rep. Bankr. 262.]

District Court, D. Connecticut. Dec. 19, 1870.

BANKRUPTCY — RIGHTS OF ASSIGNEE — SETTING ASIDE LEVY OF EXECUTION—ATTACHMENTS.

1. The petition of assignees in bankruptcy to have the levy of an execution on personal property of the bankrupts declared void will be granted where it appears that such levy is not in conformity with the laws of the state in which the same is made.

[Cited in Re Klancke, Case No. 7,864; Davis v. Anderson, Id. 3,623; Re Butler, Id. 2,236.]

[2. Where personal property of a bankrupt has been attached, the assignee in bankruptcy can take advantage of any remedy which would have been open to a subsequent attaching creditor, since the assignee represents the creditors of the bankrupt, as well as the bankrupt himself.]

[In equity. Bill by Lewis F. Beers and Francis H. Nash, as assignees of the Allerton Iron Works Manufacturing Company, bankrupt, against George Place and Charles F. Hardwick, to declare void a levy of execution. Decree for complainants.]

Lewis F. Beers and Stephen W. Kellogg, for plaintiffs.

Asa B. Woodward and Henry C. Robinson, for defendants.

SHIPMAN, District Judge. This is a bill in equity praying this court to declare void a levy of an execution upon certain machinery of the bankrupts, and thus remove a cloud on the title of the assignees thereto. The facts which have led to this controversy are as follows: The Allerton Iron Works Manufacturing Company were a corporation located at Norwalk, Connecticut, and engaged in building machinery. They had a machine-shop, and such tools and machinery as are necessary in a business of that character. On the 10th of January, 1870, Reynolds & Co., a corporation located at New Haven, brought a suit against the Allerton Iron Works Manufacturing Company (the bankrupts), and attached the machinery in their shop at Norwalk to the amount of four thousand dollars. The writ upon which this attachment was made, was returnable and returned to the superior court for New Haven county on the first Tuesday of March, 1870; and on the 30th of the same month judgment was rendered in favor of the plaintiffs therein against the bankrupts for one thousand one hundred and fifty-six dollars and nine-

[1] [Reprinted from 4 N. B. R. 459, (Quarto, 150,) by permission.]

ty-one cents. On the 3d of February, 1870, the same property was attached by the New York Steam Engine Company for two thousand two hundred dollars. On the same day the defendants, George Place & Co., attached the same property for two thousand dollars; and on the 22d of April following, judgment was rendered in their favor and against the bankrupts for one thousand five hundred and seven dollars and sixty-eight cents, and execution issued thereon. On the 2d of May, 1870, the officer claimed to levy this execution on the machinery in question, the New York Steam Engine Company waiving any rights under their attachment. But the lien by the prior attachment of Reynolds & Co. was not waived, but was still in force. The officer posted the same for sale under the execution, according to the law of Connecticut. The sale has never in fact taken place, but has been from time to time adjourned by the officer, he having been enjoined from selling by the state court on the application of the assignees, the present plaintiffs, who have now brought this bill. The injunction of the state court is temporary, and the judgment creditors, George Place & Co., insist upon their right to have the property sold on the execution in their favor as soon as the injunction is removed.

On the 3d of May, 1870, the Allerton Iron Works Manufacturing Company filed their petition in this court, praying to be declared bankrupts under the act of congress [of 1867, (14 Stat. 517,)] and on the 9th of the same month were adjudicated bankrupts. The plaintiffs claim this property, over which the levy of the defendants' execution is hanging, and ask leave for a decree of this court declaring it void, in order that they may sell it at its full value, unembarrassed by this alleged lien of the defendants.

It will be noticed that all these attachments, and the execution in question, were levied on the property within four months next preceding the filing of the petition in bankruptcy. The attachments were therefore dissolved by operation of the bankrupt law when the debtors went into bankruptcy, as they were all attachments on mesne process under the statutes of Connecticut. The present defendants claim, however, that, as the bankrupt act only dissolves attachments on mesne process, the levy of their execution is left undisturbed. And it is true that the 14th section of the act dissolves such attachments only, and not levies of execution. The law, therefore, seems to contemplate possible results that are somewhat singular. An attachment on mesne process of any age short of four months, is dissolved absolutely by the adjudication, and the latter relates back to the time of filing the petition. But an execution, actually and legally levied, remains, and the property is held by it, even though the suit upon which it was founded may not have been commenced ten days before the filing of the bankrupt's petition. It

may be asked why the older attachment is dissolved while the recent levy of the execution is protected? Why the levy of the execution, except in cases where it is to enforce a lien secured by an attachment more than four months old, should not share the fate of attachments that are less than that age? It is not necessary to answer these questions in the present case. One obvious difficulty in the way of dissolving levies of executions, and thus invalidating proceedings under them, would arise out of unsettling titles to property sold under such process. Bona fide purchasers of personal and real property at judicial sales might find their titles suddenly annihilated by a decree in bankruptcy. Their vendees would be in the same predicament. This mischief would not indeed result from dissolution of proceedings under executions merely levied where the sale under them had not actually taken place. Yet congress has not seen fit to make the adjudication in bankruptcy operate to dissolve them. But, as already intimated, this peculiar feature of the statute need not be vindicated in the present case.

The plaintiffs insist that the levy of the execution in question was void, inasmuch as there was a prior attachment lien in force upon this property, when the attempted levy was made. The solution of this question depends, not upon the bankrupt act, but upon the true construction of the statutes of Connecticut relating to attachments on mesne process and the levy of executions. The practice of attaching property on mesne process and holding it in the custody of the law, subject to execution upon judgment recovered in the same suit, has been sanctioned by the law of this state for more than two hundred years. The process had been regulated by statute for a century. In 1770 the colonial legislature passed the act of which the following was a section: "No estate attached as aforesaid shall be held to respond to the judgment obtained by the plaintiff at whose suit the same is attached, either against the debtor or any other creditor, unless such judgment creditor take out execution on such judgment and have the same levied on the goods or personal estate within sixty days after final judgment, or on real estate, and have the same appraised and recorded within four months after such judgment obtained; or, if such goods or estate are encumbered by any prior attachment, the execution be levied as aforesaid within the respective times aforesaid after such incumbrance is removed." Laws Conn. Oct. Sess. 1770. This section has never been repealed or modified, but has remained in force down to the present time. Rev. St. Conn. 1865, pp. 6, 7. The practice has been uniform under it. The first attaching creditor has sixty days in case of personal property, and four months in case of real estate, after final judgment, within which to levy his execution and thus enforce his attachment lien.

After he has done so, or his time has expired, then the second attaching creditor has the same length of time within which to levy his execution. The third attaching creditor has the same time after the second, that the second does after the first, and so on till the property is exhausted, or the attachments are all satisfied. This is the natural and orderly mode of proceeding, and has been universally followed in this state for more than a century. No case has been cited showing even an attempt to introduce a different practice, and after a thorough search I have been able to find none. If there had been no statute regulating the order in which executions should be levied under successive attachments, this long and uniform practice, so consonant with good sense and the orderly administration of justice, would be strong evidence that such had been the settled policy of the state in the disposition of debtors' property thus taken into the custody of the law and held to respond to the liens of attaching creditors. But a careful examination of the statute in question leaves no room for doubt as to what it prescribes. The language is explicit, that "no estate attached as aforesaid shall be held to respond to the judgment * * * either against the debtor or any other attaching creditors, unless such judgment creditor take out execution and have the same levied"—when?—on personal estate within sixty days, and on real estate within four months, or, in case of incumbrances by prior attachment, "unless the execution shall be levied as aforesaid, within the respective times as aforesaid, after such incumbrance is removed." It would be difficult to use language more explicit. The act plainly says to the first attaching creditor, you shall levy your execution within sixty days on personal property, and within four months on real estate, or it shall not be held to respond to your judgment. To the second attaching creditor it says, with equal explicitness, the property shall not be held to respond to your judgment, unless you levy your execution within sixty days on personal property, and within four months on real estate, after the first lien by attachment is removed. These respective periods within which first and subsequent attaching creditors are to enforce their liens, are thus marked out with precision. One does not begin until the other ends, unless the word "after" is destitute of meaning. All conflict, confusion, embarrassment, or failure of justice is thus avoided. So just is this mode of procedure, that if the language of the act were somewhat doubtful, courts would struggle to maintain the practical construction hitherto given it. But as I have already stated, the language is too plain to admit of question, and, after having received this practical interpretation for a century, it should not be disturbed now by an innovation which would introduce confusion, uncertainty, and injustice.

If this view of the law needed any further support, it would be found in the consequences which would inevitably follow if subsequent attaching creditors were allowed to levy their executions subject to prior attachments. The extent and value of such prior liens can never be determined until judgment in the suits out of which they originated be rendered; and even then it can never be known whether the creditors having such liens would enforce them or not, until after the expiration given them by statute. Take the case of a prior attachment upon a suit for a tort. The property attached is taken into the custody of the law to respond to such judgment as may be recovered. There is an inchoate lien to the extent of the direction in the writ. The extent and value of this lien which may finally be enforced against the property attached, depends upon a great variety of facts and circumstances, including, often, even the motives and intentions of the alleged tort-feasor, which cannot be approximately guessed at, much less estimated or appraised, until the case is heard and judicially determined. To allow property thus situated, and in the custody of the law, to be sold subject to such a lien, could not fail to often work the grossest injustice to the debtor, by sacrificing his property for a nominal sum bid by a speculative purchaser. Indeed, such a disposition of the property would not merit the name of a sale, for a sale implies that it be for such value as the judgment of purchasers in the market may put upon it. But no judgment of its value under such circumstances can be formed. Purchasers can have no information upon which to found such a judgment. In the case supposed, the first attachment lien might be swept off by a judgment in the defendant's favor, or reduced to a nominal sum if the plaintiff should recover at all, and yet he might find his whole property attached had been sold by a second attaching creditor, to satisfy some petty judgment of the latter. The same absurd and oppressive results would often follow in suits on contracts. A law which should thus take the property of the citizen into its custody, and make such an unjust and arbitrary disposition of it, would not long be tolerated in any civilized community. The mischievous consequences of such a proceeding would be endless. Some of them are well stated in Barnard v. Fisher, 7 Mass. 71.

In the case of Pease v. Bancroft, 5 Metc. (Mass.) 90, involving the question whether a sale of an equity of redemption on a second attachment, pending the first, would have been good as against the debtor, the court decline to express an opinion, though they give a good reason why it ought not to be held good. The court, however, held that such a sale, by a second attaching creditor, was void as against all the others, and thereby let in a third attaching creditor to the rights which the second would otherwise

have retained. But I attribute no importance to the doubt implied, from the language of the court in Pease v. Bancroft. In the first place, the language of the statute of Connecticut regulating the levy of executions, expressly provides, that the property shall not be held to respond to the judgment "either against the debtor or any other creditor," unless execution is taken out and levied in the order and within the time provided. In the second place, the present case comes within the principle laid down in Pease v. Bancroft, for the assignees represent the creditors of the bankrupt as well as the bankrupts themselves, and can take advantage of any remedy which would have been open to subsequent attaching creditors. It follows from these views, that the levy of the execution having been made while there was a subsisting prior incumbrance by attachment on the same property, the same is void under the law of Connecticut.

But it is said that the plaintiffs have adequate remedy at law, and are therefore entitled to no relief in equity. There might be force in this objection, but for the peculiar provisions of the statutes of Connecticut relating to attachments and executions levied on machinery used in manufacturing establishments. Attachments of such property are made, where it cannot be removed without manifest injury, by particularly describing the same in the return of the officer, and leaving a copy of the writ with such return thereon in the town clerk's office, in the town where the same is situated. In case of the levy of an execution, notice thereof is posted by the officer on the door of the building in which the same is situated. This course was pursued in making the levy in question. The officer making it has no actual possession, but his official acts, done, as he claims, under color of law and in the execution of legal process, constitute a cloud on the title of the assignees that might well affect the price in the market. Such a cloud it is the peculiar province of a court of equity to remove. But even if the officer had actual possession of this property, holding it under this alleged color of right, on a proper application, this court might feel called upon to exercise the power conferred upon it by the bankrupt act, and compel him to deliver it to the assignees, instead of turning them over to an action of trover. But this question does not arise in the present case.

I am satisfied that the plaintiffs are entitled to have this proceeding of the defendants under their execution declared void, except as to the levy on the upright drill, which was not attached by Reynolds & Co., and a decree will be entered accordingly, with costs to be apportioned.