ATLAS GARAGE AND CUSTOM BUILDERS, INC. *v.* JOAN C. HURLEY

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued June 4—decision released October 15, 1974

*Harold L. Rosnick,* with whom, on the brief, was *Sigmund L. Miller,* for the appellant (defendant).

*Mark G. Sklarz,* with whom, on the brief, were *Richard A. Sugarmann* and *Murray Trachten,* for the appellee (plaintiff).

SHAPIRO, J.   The plaintiff brought an action against the defendant seeking to foreclose a judgment lien on real estate in Shelton formerly belonging to the defendant's husband, alleging, among other claims, that the defendant, at an earlier date and after attaching the premises, "recorded a Judgment of Divorce" against her husband "pursuant to Sec. 52-22 of the Connecticut General Statutes thereby vesting title to said premises in the defendant and merging the defendant's claimed attachment into the title held by her." In the defendant's answer, these claims were left to the plaintiff's proof. Also, by way of special defense and counterclaim, the defendant alleged that by virtue of her attachment and subsequently recorded judgment, the plaintiff's attachment and judgment lien should be declared a nullity, removing it "as a cloud on the legal title of the defendant." From a judgment rendered in favor of the plaintiff wherein "[t]he issues of liability . . . [were] resolved in favor of the plaintiff," the defendant has appealed to this court.

On November 1, 1968, the defendant instituted an action against her husband, then the owner of certain realty in Shelton, claiming a legal separation or divorce, custody of and support for their minor children, alimony, counsel fees and a conveyance to her by her husband "of his interest in the real estate" located in Shelton. On that date, by direction of the writ, summons and complaint, the hus-

band's property was attached to the value of $25,000 and the certificate of attachment was recorded on the land records. Thereafter, by writ, summons and complaint dated December 19, 1968, the plaintiff brought an action against the husband, William C. Hurley, in which damages in the amount of $2700 were claimed, and caused an attachment, recorded on the land records on December 27, 1968, to be placed upon the Shelton premises. On April 30, 1969, the plaintiff obtained a judgment against the husband in the amount of $2465 plus costs of $40.90, and on May 8, 1969, filed a judgment lien on the land records. On February 3, 1970, a judgment of divorce was granted to the defendant, awarding her custody of and support for the minor children, one dollar per year as alimony and title to an automobile, and ordering that the husband's title to the Shelton property be transferred to the defendant, the judgment reciting in part that this "shall constitute a transfer of this property under Section 52-22 of the General Statutes." The judgment was recorded on March 31, 1970. The trial court, in the case before us, concluded that the judgment lien recorded by the plaintiff related back to December 27, 1968, being the date of its attachment; that that judgment lien has priority over the attachment placed upon the premises by the defendant on November 1, 1968; and that the transfer of the property to the defendant pursuant to § 52-22 and upon recordation of the judgment on the land records did not relate back to the defendant's attachment but rather served to convey to the defendant title to the property only as of the date of the divorce decree.

The defendant has assigned error in the court's refusal to reach a conclusion contained in her draft

finding, in reaching the conclusions which it did reach and in rendering judgment for the plaintiff. The issue dispositive of the appeal is whether the transfer of the husband's title to the Shelton real estate under the judgment of divorce pursuant to General Statutes § 52-22 relates back to the defendant's attachment so as to take priority over the plaintiff's subsequent attachment and judgment lien.

At the outset, we point out that there can be no dispute that the judgment lien recorded by the plaintiff on May 8, 1969, related back to December 27, 1968, the date of its attachment. General Statutes § 49-44; *City National Bank* v. *Traffic Engineering Associates, Inc.,* 166 Conn. 195, 199, 348 A.2d 637.

General Statutes § 46-14 provides in part that a divorce action may be brought to the Superior Court "and whenever alimony is claimed, attachments to secure the same may be made by direction in the writ or by an order pending suit in the same manner as in other civil actions." "An attachment of property on mesne process is a mode of obtaining security for the satisfaction of any judgment which the plaintiff may finally recover. . . . An attaching creditor must stand upon his legal right. He claims a preference over other creditors, and he can only obtain it by complying with the statutory conditions." *Morgan* v. *New York National Bldg. & Loan Assn.,* 73 Conn. 151, 152–53, 46 A. 877.

General Statutes § 52-279, entitled "When attachments may be granted," provides in part: "Attachments may be granted upon all complaints containing a money demand and against the estate of the defendant, both real and personal." Section 52-285, entitled "Attachment of real estate," provides the

method by which an attachment is made through means of a certificate which is completed and lodged by the officer by leaving it in the office of the town clerk of the town in which the real estate is situated, to be recorded at length in the land records. The last sentence of the statute reads: "No such certificate left in the town clerk's office for record shall have the effect of the notice of action pending provided for in section 52-325." This sentence relates to a lis pendens and its manner of application as a notice of the pendency of an action. Thus a certificate of attachment cannot be used as a notice of lis pendens. In brief, actions based upon attachments are actions in which the plaintiff seeks to satisfy a money demand out of the defendant's property. Such actions are properly labeled actions quasi in rem. They are to be distinguished from actions brought to establish or enforce previously acquired interests in the property, such as actions to quiet title, to remove a cloud on the title, to set aside a deed, or to foreclose a lien or mortgage. Such actions are properly labeled actions in rem. See 1 Stephenson, Conn. Civ. Proc. (2d Ed.) § 44, pp. 175–76. As to the commencement of a divorce action, our civil procedure makes no provision for imposing a lis pendens but allows the making of an attachment whenever alimony is claimed.

*Waterbury Lumber & Coal Co.* v. *Hinckley*, 75 Conn. 187, 52 A. 739, concerned an action in which the plaintiff sought to subject the interest of two defendants in certain real estate to a lien in its favor for a money judgment for materials furnished in repair of a building. The writ directed an attachment of the defendants' property to the value of $200. In its judgment, the trial court declared that the property should be subject to the attachment

lien made at the inception of the action, that such lien should be prior to the interest of either defendant, that a judgment lien predicated upon the attachment lien should be prior to the interest of either of the defendants, and that such a judgment lien might be filed against the premises and should have the same force and effect as is provided by the statutes for the filing of judgment liens. This court found error and held (p. 191): "By such attachment as may have been made in commencing this action no lien was acquired, since the complaint contained no money demand. General Statutes, § 893 (Rev. 1902, § 826) [now § 52-279]. . . . In the present case no judgment for money damages was rendered, and none could have been rendered upon the complaint."

As stated earlier, the defendant commenced her divorce action by attaching her husband's interest in the Shelton realty to the amount of $25,000. In her prayer for relief were included claims for alimony and "[a] conveyance to the plaintiff by the defendant of his interest in the real estate . . . ." Acting as the court in the defendant's divorce action, the referee, pursuant to this prayer for relief, made an award of alimony, limiting it, however, to the sum of one dollar per year. Also, pursuant to § 52-22, the referee ordered that title to the husband's Shelton real property be transferred to the defendant. The defendant argues in her brief that since, pursuant to § 46-14, she was allowed to attach her husband's property to secure an alimony award, it cannot be conceived how such an award would not include the transfer of title to the realty, which transfer would automatically relate back to her attachment. As authority for this claim, the defendant cites various cases outside Connecticut, relying

mainly on *Germania National Bank* v. *Duncan,* 62 Okla. 144, 161 P. 1077, and *Graham* v. *Pepple,* 129 Kan. 735, 284 P. 394. In both cases, each involving the instituting of a divorce action where the wife attached her husband's real estate, the court held that the institution of the divorce action created a lis pendens upon the realty of the husband, thereby giving the wife a claim superior to claims of creditors made subsequent to the commencement of the divorce action. This is not the law in Connecticut and the defendant has failed to demonstrate otherwise. The defendant here, having commenced her divorce action by an attachment of her husband's realty, cannot claim at the same time, as she does in her brief, that this also constitutes a lis pendens. As we have already shown, these two proceedings are separate and distinct, and by statute are intended to serve different purposes.

The defendant makes the further claim that an equitable lien was impressed on the property which related back to her attachment and took precedence over the plaintiff's judgment lien. In support of this contention, the defendant relies heavily upon *Pezas* v. *Pezas,* 151 Conn. 611, 201 A.2d 192. There, the defendant husband had left the state and in personam service could not be achieved. The plaintiff wife, for herself and through her as next friend for the three minor children, issue of the marriage, commenced an action seeking an equitable order for future support. The defendant's undivided one-half interest in their jointly owned real property was attached by the plaintiffs. The entire equity of redemption had an approximate value of $75,000, leaving the value of the interest of each joint owner at about $37,500. About an hour after the plaintiffs' attachment had been placed upon the defendant's

interest in the real estate, a second attachment was placed upon it by a creditor of the husband (hereinafter referred to as Transport) who recovered a judgment against him in the amount of $405,500 and then duly placed a judgment lien in that amount upon the defendant's interest in the property. Upon trial of the issues, a judgment was entered ordering periodic payments for the support of the plaintiffs, and Transport, the intervening creditor, appealed. This court held (p. 614): "In personam service on the defendant was not achieved by the plaintiffs, so that the judgment for support is collectible only from the property attached. *Artman* v. *Artman* . . . [111 Conn. 124, 127, 149 A. 246]; *Smith* v. *Smith,* 150 Conn. 15, 18, 183 A.2d 848." This court held further (pp. 616–17): "Obviously, if the plaintiffs' claim [for support] were wholly due, . . . it would, by virtue of the prior attachment, have taken precedence over that of Transport. See cases such as *Beers* v. *Place,* 3 Fed. Cas. 71, 72 (No. 1233); 36 Conn. 578, 581; *Coit* v. *Sistare,* 85 Conn. 573, 578, 84 A. 119. The defendant's duty to support, however, is a continuing obligation, which ordinarily exists even apart from any judgment or decree of support. Here, specific property was properly seized under the attachment, and the decree impressed an equitable lien on that property for the satisfaction of the order of support in the decree, in accordance with the procedure outlined in cases such as *Artman* v. *Artman,* 111 Conn. 124, 130, 149 A. 246, and *Gimbel* v. *Gimbel,* . . . [147 Conn. 561, 565, 163 A.2d 451]. Under these circumstances, the equitable lien, impressed on the defendant's interest in the property by the decree, related back to the original attachment and took precedence over Transport's judgment lien, which related back to an

attachment subsequent to that of the plaintiffs." We find that the facts in that case, in which the court exercised its power of equity, have no resemblance to the facts confronting us in this case, nor can we apply the law here as it pertains to *Pezas*. There, the whereabouts of the defendant husband were unknown and the only manner in which support payments could be accomplished was through the quasi in rem action against the defendant's interest in the jointly owned real estate. Transport, as an intervening creditor under § 52-86,[1] defended the support action for the absent defendant husband in the expectation of protecting its own interest in the property upon which it had placed a judgment lien. As required by § 52-86, Transport indicated that it had reason to believe it was being defrauded by a recovery by the plaintiff wife. Since the husband's interest in the realty was his only available asset within the court's jurisdiction, this court's determination, on equitable grounds, was predicated on providing assurances for future support which would not be available but for the property, and as considered in the light of the amount of Transport's judgment lien.

General Statutes § 52-22 provides that "[a]ny court of equitable jurisdiction may pass the title to real estate by decree, without any act on the part of

---

[1] The pertinent part of § 52-86 reads: "Sec. 52-86. WHEN CREDITOR MAY APPEAR AND DEFEND. In any action in which property has been attached, any person may appear and defend in the name of the defendant, upon filing in the court an affidavit that he is a creditor of the defendant and has good reason to believe, and does believe, that the amount which the plaintiff claims was not justly due at the commencement of the suit and that he is in danger of being defrauded by a recovery by the plaintiff, and upon giving bond with surety to the plaintiff, in such amount as the court approves, for the payment of such costs as the plaintiff may thereafter recover. . . ."

the defendant, when in its judgment it is the proper mode to carry the decree into effect. Such decree, having been recorded in the land records in the town where such real estate is situated, shall, while in force, be as effectual to transfer the same as the deed of the defendant." The trial court determined that such a decree "passing the title to the real estate is merely an alternative method — that it serves the same function as would a deed of conveyance duly executed by the defendant himself." In support of its position, the trial court relied on *King* v. *Bill,* 28 Conn. 593, 596. In the *King* case, this court based its decision on Statutes, 1854, p. 475 § 22, which contained language almost identical to that of § 52-22. As to the statutory language, the court (pp. 597–98) held that under the statute which provides that courts of equity may pass title to real estate by decree without any act of the defendant owner and that such decree shall be as effectual to transfer title as the deed of the defendant owner would be from the time of its execution, the title passes by the decree only as of the date of the decree and does not, as a legal title, relate back to the commencement of the suit. In further reference to that statute, the court in *King* (p. 598) said: "It thus plainly intended only to provide that a court of chancery might, at its discretion, substitute a new mode of vesting the title to land in certain cases, for the one [ordering the owner to convey title] which by the course of that court it was customary previously to adopt." It has been held to be a method more simple and direct than that of requiring the defendant owner to execute a deed. *Robinson* v. *Cross and Pomeroy,* 22 Conn. 170, 174.

Insofar as the statutes prescribe the causes for which attachment may issue, they are strictly con-

strued; the courts have no right under the guise of liberal construction to read into an attachment statute any meaning which its words, construed according to the statutory rules, do not convey. 6 Am. Jur. 2d 565, Attachment and Garnishment, § 7. Where the statute so provides, a remedy by attachment is limited to actions to recover a sum of money only, and in such a case it cannot be employed as a means of recovering specific property. 7 C.J.S., Attachment, § 10. Although the record in *King* does not disclose that an attachment was made at the commencement of the suit, we think that it matters not. As we have already shown, under the defendant's attachment in her divorce action, she was thereby secured as to her money demand for alimony. Thereafter, the court in its judgment did make a money award of alimony. It also granted the defendant further relief as sought by her under § 52-22 and thereby passed title to the Seymour realty to her, an act which did not constitute a money judgment but on the contrary provided an alternative method of relief. Under § 52-22, the passing of title to the defendant was only as effective as would have been a deed from the time of its execution. Thus, title vested in her on the date of the judgment and did not relate back to the date of her attachment.

There is no error.

In this opinion HOUSE, C. J., LOISELLE and MAC-DONALD, Js., concurred.

BOGDANSKI, J. (dissenting). I cannot agree that the subsequent attachment of the plaintiff Atlas takes precedence over the prior attachment of the defendant Hurley. It is undisputed that both attachments were validly made in accordance with the

provisions of the pertinent statutes. When a valid attachment is made, a lien on the property attached is created, which lien can be erased only by a subsequent dissolution of the attachment. Drake, Attachment (6th Ed.) § 224. "An attachment of property on mesne process is a mode of obtaining security for the satisfaction of *any* judgment which the plaintiff may finally recover." (Emphasis added.) *Morgan* v. *New York National Bldg. & Loan Assn.,* 73 Conn. 151, 152, 46 A. 877; *Campbell* v. *Klahr,* 111 Conn. 225, 228, 149 A. 770. The reasoning and the result reached by the majority would seem to establish an exception to the general rules of attachment priorities for spouses who make attachments under § 46-14 on real property to secure a court award of alimony.

Nowhere in the provisions of the attachment statutes or the case law can such a distinction be found. General Statutes § 46-14 expressly provides that a divorce action may be brought to the Superior Court, "and whenever alimony is *claimed,* attachments to secure the same may be made by direction in the writ." (Emphasis added.) In this case the defendant made a specific claim for alimony, support for minor children, and a conveyance to her of her husband's "interest in the real estate located at 88 Tuckahoe Drive, Shelton." Section 46-21 of the General Statutes provides that the Superior Court may assign to any woman divorced by that court a part of the *estate* of her husband and, in addition thereto or in lieu thereof, may order alimony to be paid from the husband's income. In the divorce judgment rendered, the court ordered the defendant husband to pay $60.00 weekly for the support of two minor children and one dollar per year alimony. The court further ordered a transfer to the plain-

tiff wife of the husband's interest in realty known as 88 Tuckahoe Drive. In *Wright* v. *Wright,* 93 Conn. 296, 300, 105 A. 684, this court, in speaking of the term alimony, stated in part that "[a]limony . . . is based upon the duty of a husband to continue to support a wife whom he has in legal effect abandoned. It defines that duty in terms of money, or *property* and decrees specific performance of it; and the State itself has a social and financial interest in the performance of that duty." (Emphasis added.) See *Christiano* v. *Christiano,* 131 Conn. 589, 593-94, 41 A.2d 779; *Cary* v. *Cary,* 112 Conn. 256, 259, 152 A. 302.

Since the express provisions of § 46-14 permit a wife to make a valid attachment on real estate to secure a court award of alimony, I cannot see why such an award should not include a judgment ordering a transfer of title to the attached property, nor why such a judgment lien should not relate back to the attachment. Otherwise, the attachment made and the judgment rendered giving the wife a part of the husband's *estate* would be superfluous.

I would, therefore, find error.