## PEOPLE'S BANK *v.* BILMOR BUILDING CORPORATION ET AL.
### (10642)

Dupont, C. J., Heiman and Freedman, Js.

Argued June 3—decision released September 1, 1992

*Karen P. Blado,* with whom, on the brief, was *Alyce L. Raboy,* for the appellant (plaintiff).

*Dominic J. Ferraina,* for the appellees (defendants).

DUPONT, C. J. The principal issue to be decided in this mortgage foreclosure action is whether a prejudgment attachment may be obtained, as additional security, to secure recovery of an anticipated deficiency judgment when there is an expectation that the property securing the debt may not be sufficient to satisfy the debt. We conclude that such an attachment may be obtained upon the requisite determination of probable cause.

The salient facts are not in dispute. On September 14, 1989, the defendant Bilmor Building Corporation (Bilmor), through its president, the defendant Eamon F. Moran, executed a promissory note in favor of the plaintiff, People's Bank (bank),[1] in the amount of $650,000. Moran personally guaranteed payment of the debt. As further security for the debt, Bilmor contemporaneously mortgaged to the plaintiff its interest in certain real property located in the town of Bloomfield and the mortgage was subsequently recorded on the Bloomfield land records. In December, 1990, Bilmor and Moran defaulted on the note by failing to make timely payments under the terms of the note.

The plaintiff instituted the present action on July 17, 1991, seeking inter alia, foreclosure of the mortgage, a deficiency judgment against the defendants, and money damages. In conjunction with this action, the plaintiff, through its attorney, issued a $705,000 ex parte prejudgment attachment against Bilmor's interest in two properties located in the town of Windsor. The complaint alleged that a lis pendens relating to

---

[1] On January 15, 1992, P. B. Real Estate, Inc., was substituted as the plaintiff.

these properties had also been recorded on the land records. The attachment was issued and recorded on July 25, 1992, without prior notice or hearing and without any action by a court, pursuant to a clause in the note that expressly waived the defendants' rights to a notice and hearing,[2] as permitted by General Statutes § 52-278f.[3]

Bilmor and Moran subsequently, on August 21, 1991, moved to dissolve the prejudgment attachment.[4] At the

---

[2] Paragraph 11 of the note contained the following language in bold type and capital letters: "Commercial Loan; Prejudgment Remedy Waiver. Makers acknowledge receipt of a copy of this note and certify that this is a commercial transaction and expressly waive all rights under sections 52-278a through 52-278g of the Connecticut General Statutes of prior notice or hearing with respect to any future . . . attachment . . . by the holder against property owned or possessed by Makers. Makers hereby waive the right to prior notice of and a hearing on the right of any holder of this note to a prejudgment remedy, which remedy enables said holder by way of attachment . . . to deprive Makers of . . . any of their property at any time prior to judgment in any litigation instituted in connection with this note."

[3] General Statutes § 52-278f, as amended by Public Acts 1991, No. 91-315, provides: "In an action upon a commercial transaction . . . wherein the defendant has waived his right to a notice and hearing under sections 52-278a to 52-278g, inclusive, the attorney for the plaintiff shall issue the writ for a prejudgment remedy without securing a court order provided that (1) the complaint shall set forth a copy of the waiver; (2) the plaintiff shall file an affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause to sustain the validity of the plaintiff's claim; and (3) the plaintiff shall include in the process served on the defendant a notice satisfying the requirements of subsection (b) of section 52-278e, as amended by section 1 of this act." Subsections (2) and (3) were added by the 1991 public act to take effect July 1, 1991. The plaintiff satisfied all three conditions.

[4] An ex parte prejudgment attachment made pursuant to General Statutes § 52-278f must include in the process served on the defendant a notice that the defendant has a right to a hearing to object to the attachment for lack of probable cause to sustain the claim, or to request that the remedy be modified, vacated or dismissed or to claim the property attached is exempt from execution. No party has raised any issue on appeal as to the constitutionality of § 52-278f arising from its ex parte nature, allowing an attachment without notice or hearing due to an express contractual waiver. See *Connecticut* v. *Doehr,*　 U.S.　, 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991);

scheduled hearing on the motion, the defendants claimed that the attachment was improper because it was filed without a court hearing in violation of law, that the attachment was based on the assumption that a deficiency judgment would enter in the foreclosure action, that no deficiency had yet been found to exist, and that the sole remedy in an action to foreclose a mortgage is against the real property liened by the mortgage. The motion to dissolve was granted on September 16, 1991, from the bench by the court, *A. Aronson, J.* A memorandum of decision was later filed on November 22, 1991.

After the defendants moved to dissolve the ex parte attachment, the plaintiff, on September 10, 1991, filed an application for a prejudgment remedy that was based not on General Statutes § 52-278f, but on § 52-278d. A scheduled hearing on the application was held on October 7, 1991, and the application was denied by the same court on October 25, 1991. Pursuant to the plaintiff's motion for articulation, the trial court issued a memorandum of decision as to the denial of the application on January 14, 1992.

On December 2, 1991, the trial court, *Freed, J.,* rendered a judgment of strict foreclosure against the mortgaged property. Both defendants had previously been defaulted for failure to disclose a defense. The court found the total amount of the debt, including appropriate fees, to be $705,890.03 and the value of the property to be $605,000. The law days passed without redemption and title to the Bloomfield property vested in the plaintiff. After the judgment of strict foreclosure

*Shaumyan* v. *O'Neill,* 795 F. Sup. 528 (D. Conn. 1992); *Union Trust* v. *Heggelund,* 219 Conn. 620, 624 n.3, 594 A.2d 464 (1991). Nor is there any dispute that the defendants did expressly waive notice and hearing.

was entered, the plaintiff moved for a deficiency judgment, which was granted on February 10, 1992, by the trial court, *Satter, J.*[5]

The trial court, *Aronson, J.*, dissolved the ex parte attachment and denied the application for an attachment because it concluded, as a matter of law, that a mortgagee may not "obtain additional security for a mortgage debt based solely on an expectation that the property securing the debt may be inadequate" and that, until a deficiency judgment is rendered, there can be no probable cause to support a plaintiff's application for a prejudgment remedy or the plaintiff's ex parte real estate attachment. At the hearing on the defendants' motion to dissolve the attachment, there were representations by the attorneys for the parties as to the amount of the debt and the value of the property as of that date. At the hearing on the plaintiff's application for a prejudgment remedy, the plaintiff offered to present testimony of a bank official that the debt exceeded $690,000 and the testimony of a real estate appraiser that the fair market value of the property was $610,000. The plaintiff also relied on the affidavit filed with the § 52-278f attachment to establish probable cause. The defendants conceded that the plaintiff's figures were accurate. The court, however, allowed no evidence because of its view of the law.

---

[5] Although a deficiency judgment was eventually obtained, the issue of whether the July 17, 1991 attachment is valid or whether the September 10, 1991 application for an attachment should have been denied does not become moot in this case because if the attachment were proper or if the application should have been granted, the plaintiff would have a priority over the other creditors of the defendants in the collection of the amount of the deficiency as finally determined in February, 1992. See General Statutes § 52-380a (b). Because the dissolution of the attachment was stayed by the trial court, any relief awarded to the plaintiff would have practical consequences. The amount of an ex parte attachment set by the attorney of a plaintiff without prior court approval, if the attachment is provided for in a statute, relates back to its recordation but may not exceed the original amount set. *Union Trust* v. *Heggelund,* 219 Conn. 620, 626–29, 594 A.2d 464 (1991).

The determination of a deficiency, according to the trial court, could be made only following a hearing on a motion for a deficiency judgment, which could only occur after a judgment of foreclosure had been rendered. Therefore, because the existence or amount of any deficiency had not yet been determined as of the dates of the hearings on the motion to dissolve the prejudgment remedy attachment and on the application for a prejudgment remedy, the former was granted, and the latter denied. The memoranda of decision as to both the motion and application are virtually identical as to their rationale.

The bank appealed from the dissolution of the attachment and from the denial of its application for a prejudgment remedy and filed a motion to stay the dissolution of the attachment pursuant to General Statutes § 52-278*l* (c). The trial court granted the plaintiff's motion to stay the dissolution of the prejudgment attachment.

The resolution of the appeal from the granting of the defendants' motion to dissolve the attachment and the resolution of the appeal from the denial of the plaintiff's application to obtain an attachment require the same analysis. We, therefore, discuss them together unless otherwise noted.

The plaintiff claims that the prejudgment attachment should not have been dissolved because it was a legally allowable remedy in a mortgage foreclosure action that also sought a deficiency judgment and damages. The plaintiff further argues that it should have been allowed to present evidence relating to the merits of whether probable cause existed for the attachment. The plaintiff also claims that the court improperly denied its application for a prejudgment remedy.

The defendants assert that the "contingent" nature of a deficiency judgment, coupled with General Stat-

utes §§ 49-1, 49-14, and 49-28, has the net effect of prohibiting prejudgment attachments to secure recovery of an anticipated deficiency judgment in foreclosure cases. The foundation of the defendants' argument is that a deficiency judgment does not "accrue" unless and until an ascertainable dollar amount of the deficiency is established at the time of foreclosure, and that, until then, the deficiency judgment is merely contingent. The defendants maintain that the deficiency judgment is contingent until the time of the judgment of foreclosure for two reasons. The first is that the foreclosing mortgagee is entitled to a deficiency judgment only if he applies for it "within thirty days after the time limited for redemption has expired." General Statutes § 49-14; Practice Book § 528. The second reason is that the amount of the deficiency is uncertain until the completion of the foreclosure hearing, and, in fact, there may be no deficiency at all. The defendants use this allegedly contingent quality as the springboard for their analysis.

The defendants further assert that because the deficiency judgment had not yet "accrued" at the time of the prejudgment attachment, the attachment cannot be predicated on the anticipated deficiency but must, by implication, be grounded on the note evidencing the underlying debt or obligation.

In order to resolve the issue of whether a foreclosing mortgagee may, at the beginning of a foreclosure action, take advantage of the statutes relating to prejudgment remedies against property of a mortgagor that is unencumbered by the mortgage, in which action the mortgagee also seeks a deficiency judgment, we must first resolve whether the cause of action for a deficiency judgment existed at the time the suit was instituted.

"A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and of that delict constitute the cause of action." (Citations omitted; internal quotations marks omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 546–47, 590 A.2d 914 (1991); *Levine* v. *Town Plan & Zoning Commission*, 25 Conn. App. 199, 207, 594 A.2d 9 (1991). Although a single group of facts may give rise to several kinds of relief, there is still one single cause of action. *Vakalis* v. *Kagan*, 18 Conn. App. 363, 367, 557 A.2d 1285 (1989).

At the time of the commencement of this foreclosure action, a cause of action for a deficiency judgment existed. This is so because the defendants had already defaulted in payment of the note, and that delict had already caused the harm to the plaintiff, namely, whatever the loss was that was occasioned by the deficiency between the fair market value of the property and the balance, plus interest, due on the note. The same group of facts here gave rise to different kinds of relief, namely, a foreclosure, payment on a note and a deficiency judgment. These different kinds of relief do not alter the fact that there was but one cause of action at the inception of suit; *Vakalis* v. *Kagan*, supra, 367–68; and that cause of action included a statutory right to a deficiency judgment pursuant to General Statutes § 49-14.

It is well established that a mortgagee has two separate and distinct causes of action against a defaulting mortgagor. A mortgagee may pursue an action at law for the amount due on the promissory note, or it may pursue its remedy in equity and foreclose on the

mortgage. *Hartford National Bank & Trust Co.* v. *Kotkin,* 185 Conn. 579, 581, 441 A.2d 953 (1981). The mortgagee may also pursue both of these remedies simultaneously in one consolidated foreclosure suit. Id. The only restriction on the mortgagee's election of remedies is contained in General Statutes § 49-1, which provides that "[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure . . . ." General Statutes § 49-14 furnishes an exception to § 49-1 by providing that, "[a]t any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment." Id. Thus, a mortgagee who elects to pursue his right of foreclosure of a mortgage and his right to obtain payment of a promissory note may also, in the same action, seek a deficiency judgment. When a deficiency judgment is sought, the plaintiff may recover the difference between the amount due on the underlying debt and the amount received upon foreclosure. *First Bank* v. *Simpson,* 199 Conn. 368, 371, 507 A.2d 997 (1986).

In this case, the plaintiff sought and obtained a judgment of foreclosure. As the amount due on the underlying debt exceeded the value of the property upon strict foreclosure, the plaintiff was entitled, within thirty days of the foreclosure, to seek a deficiency judgment in accordance with § 49-14. Even though the plaintiff was entitled to obtain a deficiency judgment in the foreclosure suit, it would be able to recover the amount of the deficiency judgment only if the defendants had other assets left to satisfy that judgment. The plaintiff, by its prejudgment attachment, attempted to secure a position superior to that of other attaching

creditors. The plaintiff seeks to have its deficiency judgment or any judgment lien obtained pursuant to the deficiency judgment relate back to the date of the attachment.

The first sentence of General Statutes § 52-279 authorizes the granting of attachments "upon all complaints containing a money demand against the estate of the defendant, both real and personal." The statute then details specific instances when such attachments are not permitted. None of the enumerated exceptions proscribes the use of attachments in foreclosure actions. It is a well established maxim of statutory construction that when a statute enumerates exceptions to a stated general proposition, anything not excepted is conclusively included. *State* v. *Kish,* 186 Conn. 757, 443 A.2d 1274 (1982).

There is also no exception for foreclosure actions in the general prejudgment remedy statute. General Statutes §§ 52-278a through 52-278h. General Statutes § 52-278b provides for prejudgment remedies in "any action at law or equity." Thus, neither the attachment statute nor the prejudgment remedy statute specifically prohibits the granting of a prejudgment attachment in a foreclosure action.

Similarly, there is nothing in those statutes that specifically prohibits the granting of a prejudgment attachment to secure the payment of a deficiency judgment. If the legislature intended to prevent the use of prejudgment attachments to secure the payment of deficiency judgments in foreclosure cases, then presumably it would have done so. It has not.

The note signed by the defendants clearly anticipated that a prejudgment remedy might be sought on property other than the mortgaged property in order to secure the debt. The defendants waived the right to prior notice of and hearing on any prejudgment rem-

edy that would enable the plaintiff to deprive the defendants of *any* of their property at any time prior to judgment in any litigation instituted in connection with the note.

We are unpersuaded by the defendants' bedrock assertion that the possibility or probability of a deficiency judgment cannot form the basis for a prejudgment remedy because it cannot be known until the completion of the foreclosure action whether there will be such a judgment and, if there is, its amount. While it is true that a deficiency judgment is "contingent" in that it cannot automatically be granted by a court without credible evidence as to an appropriate amount; *Eichman* v. *J & J Building Co.,* 216 Conn. 443, 449, 582 A.2d 182 (1990); other prejudgment remedies that are based on various causes of action that can lead to judgments are no less contingent. Prejudgment remedies are available in dissolution actions; *Atlas Garage & Custom Builders, Inc.* v. *Hurley,* 167 Conn. 248, 355 A.2d 286 (1974); in an action claiming a real estate commission; *New England Land Co.* v. *DeMarkey,* 213 Conn. 612, 569 A.2d 1098 (1990); in an action claiming a cobroker commission; *Dow & Condon, Inc.* v. *Anderson,* 203 Conn. 475, 525 A.2d 935 (1987); in an action claiming damages for willfully and maliciously causing personal injury; *Goodwin* v. *Pratt,* 10 Conn. App. 618, 524 A.2d 1168 (1987); in an action for negligence stemming from a car accident; *Anderson* v. *Nedovich,* 19 Conn. App. 85, 561 A.2d 948 (1989); in an action for libel; *Haxhi* v. *Moss,* 25 Conn. App. 16, 591 A.2d 1275 (1991); in an action for a percentage of anticipated profits of a partnership; *Glanz* v. *Testa,* 200 Conn. 406, 511 A.2d 341 (1986); in an action seeking a judgment requiring the defendant to set up a trust; *England* v. *England,* 184 Conn. 85, 440 A.2d 790 (1981); in an action seeking modification of a contract; *Three S Development Co.* v. *Santore,* 193 Conn. 174, 474 A.2d

795 (1984); in an action claiming conversion of funds; *Mullai* v. *Mullai,* 1 Conn. App. 93, 468 A.2d 1240 (1983); in an action claiming past and future damages due to the sale of a defective product; *Bechert* v. *Petrol Plus,* 5 Conn. App. 296, 497 A.2d 1027 (1985); in a breach of contract action; *Augeri* v. *C. F. Wooding Co.,* 173 Conn. 426, 378 A.2d 538 (1977); and in an action for tortious interference with a contractual relationship. *William M. Raveis & Associates, Inc.* v. *Kimball,* 186 Conn. 329, 441 A.2d 200 (1982).

The likelihood of a deficiency judgment and the probable amount of such a judgment are much easier to ascertain in this case than in many other cases where prejudgment relief is routinely granted. Furthermore, the time between the institution of a foreclosure action and a deficiency judgment is usually much shorter than the time between the commencement of suit and judgment in other types of actions. Even if an appraisal conducted at the commencement of the foreclosure proceeding does not conclusively establish the anticipated value of the property at the time of foreclosure, such an appraisal would generally be accurate enough for the court to determine the propriety of issuing such relief under the probable cause standard of § 52-278e. Attachment statutes are premised on an ultimate factual contingency, namely, that the defendant may not be able to satisfy the eventual award of damages to the plaintiff. *Connecticut* v. *Doehr,* U.S. , 111 S. Ct. 2105, 115 L. Ed. 2d 1 (1991). Disputes between debtors and creditors more readily lend themselves to accurate ex parte assessment of the merits of a dispute. Id., 2115. "Regarding damages, if there is an uncontradicted statement in an affidavit that the affiant believes that it is probable that a stated sum may be recovered upon a trial and such belief is founded on reasonable subordinate facts, this will ordinarily be sufficient to support probable cause for an attachment."

*McCahill* v. *Town & Country Associates, Ltd.,* 185 Conn. 37, 39, 440 A.2d 801 (1981). We conclude that a deficiency judgment is not of such an unascertainable nature that it is precluded from serving as the basis of a valid prejudgment attachment upon the requisite showing of probable cause.

The defendants also argue that the note is serving as the basis of the attachment, which is prohibited by General Statutes §§ 49-1 and 49-28. The purpose of § 49-1[6] is to determine the rights between the parties in one action; it is not intended to act as a bar to the pursuit of ancillary proceedings to secure payment of any judgment. See *First Bank* v. *Simpson,* supra; 7 H.R. Proc., Pt. 4, 1957 Sess., p. 2375, remarks of Representative Edward C. Krawiecki. Moreover, to the extent that § 49-1 limits the mortgagee's remedies, it does so only after the entry of a judgment in foreclosure. *First Bank* v. *Simpson,* supra, 376. Thus, § 49-1 does not prohibit the granting of a prejudgment remedy prior to judgment in the foreclosure action or during its pendency.

Similarly, the defendants assert that "[a] clear reading of [General Statutes § 49-28[7]] suggests that the commencement of the foreclosure action acts to stay any other independent actions on the debt, such as a separate action on the note only." A prejudgment attachment, however, is not an independent action on

[6] General Statutes § 49-1 provides in relevant part: "The foreclosure of a mortgage is a bar to any further action upon the mortgage . . . note . . . against the . . . persons who are liable for the payment thereof . . . ."

[7] General Statutes § 49-28 applies to foreclosures by sale and provides: "If the proceeds of the sale are not sufficient to pay in full the amount secured by any mortgage or lien thereby foreclosed, the deficiency shall be determined, and thereupon judgment may be rendered in the cause for the deficiency against any party liable to pay the same . . . but all other proceedings for the collection of the debt shall be stayed during the pendency of the foreclosure suit, and, if a deficiency judgment is finally rendered therein, the other proceedings shall forthwith abate. . . ."

the debt; *Associates Financial Services Co.* v. *Gear,* 31 Conn. Sup. 507, 510, 320 A.2d 835 (1974); it is part of the main foreclosure suit. Likewise, the procedure used to obtain a deficiency judgment is also part of the main action. See Practice Book § 528. Also, a request for a deficiency judgment in a foreclosure action is brought by written motion and not by service of process. See id. Thus, the procuring of a prejudgment attachment to secure payment of a deficiency judgment in a foreclosure suit is ancillary to the main foreclosure suit, the purpose of which is to secure a higher priority on the list of the mortgagor's creditors. A deficiency judgment provides a means for a mortgagee to recover any balance due on the mortgage note that was not satisfied by the foreclosure judgment. *Maresca* v. *DeMatteo,* 6 Conn. App. 691, 696, 506 A.2d 1096 (1986). It is the "only means of satisfying a mortgage debt when the security is inadequate to make the foreclosing plaintiff whole." *Eichman* v. *J & J Building Co.,* supra, 449, quoting *First Bank* v. *Simpson,* supra, 371. If the mortgagee brings a foreclosure of mortgage action, and pursues a prejudgment attachment, he is not seeking an additional remedy that would be barred by §§ 49-1 and 49-28, but is merely seeking to establish a higher priority for a remedy to which he is legally entitled under § 49-14.[8]

The mortgagee here simply attempted to avail itself of a commonly used procedural device in order to improve its chances to receive full recovery of a debt owed to it. The mortgagee could have sued on its promissory note, independent of a foreclosure action, and obtained a prejudgment remedy. It should not be penalized by combining an action for foreclosure with one for payment of the note. A mortgagee should not be placed at the end of the creditors' line for exercis-

---

[8] General Statutes § 49-14 provides for deficiency judgment motions by any party to a mortgage foreclosure action.

ing its legal right to initiate an action for foreclosure and payment of the note in which it could seek a deficiency judgment, rather than bringing two separate lawsuits. That would be inconsistent with the conservation of judicial resources.

Finally, allowing a mortgagee to secure prejudgment relief will not allow the mortgagee to run roughshod over the rights of the debtor, for, consistent with the granting of any prejudgment remedy, the mortgagee will be granted such relief only upon a showing of probable cause. See General Statutes §§ 52-278e, 52-278f. Even in a case such as this, where the plaintiff obtained an ex parte attachment pursuant to an express waiver by the defendants, as allowed by § 52-278f, mortgagors can still do as the defendants did, and move to dissolve the attachment. Furthermore, in accordance with § 52-278f, the plaintiff had to provide an affidavit sufficient to show probable cause.

We conclude that the ex parte attachment issued by the plaintiff's attorney was valid and in compliance with General Statutes § 52-278f. We further conclude that the prejudgment application for an attachment should have been considered to determine whether there was probable cause to grant it. In assessing that probability, the court would have had to consider both the plaintiff's claim and the defendants' defenses; *Haxhi* v. *Moss,* supra; although in this case, the defendants were defaulted for failure to disclose a defense. We hold, as a matter of law, that a mortgagee may obtain additional security for a mortgage debt by means of a prejudgment remedy, if there is probable cause to believe a deficiency judgment will be rendered and a court can make an educated prediction as to the probable amount of the deficiency.

Ordinarily, we would remand this case to the trial court so that it could hold an evidentiary hearing to

determine whether probable cause exists so as to entitle the plaintiff to prejudgment relief. See *Three S Development Co.* v. *Santore,* supra, 175–76. Because a deficiency judgment has already been entered in this case, however, probable cause for an attachment, in the amount of the judgment rendered, obviously exists.

The original ex parte attachment is currently in place due to the trial court's stay of its order to dissolve the attachment pending appeal. Because we hold that the ex parte attachment should not have been dissolved, we need not take any action on the court's denial of the plaintiff's application for an attachment.

The next question to be resolved is what was the effective date of the ex parte attachment. "Under General Statutes § 52-285, an attachment that is subsequently transformed into a judicial lien following a judgment in the underlying cause of action relates back, for purposes of determining priority, only to the moment when the certificate of attachment is left at the town clerk's office of the town where the property is located." *Farmers & Mechanics Savings Bank* v. *Garafolo,* 219 Conn. 810, 819, 595 A.2d 341 (1991). A judgment lien relates back to the date of an attachment. *Atlas Garage & Custom Builders, Inc.* v. *Hurley,* supra, 251. A prejudgment attachment relates back to the date of the attachment; *Union Trust* v. *Heggelund,* supra, 626; which in this case is the date it was issued and recorded, namely, July 25, 1991. The original attachment recorded on July 25, 1991, however, exceeded the amount of the deficiency judgment eventually obtained and must be reduced accordingly. See *Eichman* v. *J & J Building Co.,* supra.

The judgment dissolving the attachment is set aside and the case is remanded to the trial court with direction to render judgment denying the defendants'

motion to dissolve the attachment and to modify the attachment to reflect the amount of the deficiency judgment rendered.

In this opinion the other judges concurred.