FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER
OF NEW CONNECTICUT BANK AND TRUST
COMPANY, N.A. *v.* JOSEPH G. VOLL ET AL.
(13863)

DUPONT, C. J., and FOTI and HEIMAN, Js.

Argued April 27—decision released June 13, 1995

*Leo Gold,* for the appellant (defendant Zoltan Guttman).

*Thomas R. Legenhausen,* for the appellee (plaintiff).

DUPONT, C. J. This appeal is taken by Zoltan Guttman, one of the defendants[1] in a foreclosure action, from a deficiency judgment rendered against him.

Guttman raises two claims. First, he claims that General Statutes § 49-14,[2] Connecticut's deficiency judg-

---

[1] The defendants whose mortgage was foreclosed are Joseph Voll and Zoltan Guttman. As used in this appeal, the defendants refers to Voll and Guttman. Other parties claiming interests in the property are John Wendler, the city of Bridgeport and Connecticut Bank and Trust Company, N.A.

[2] General Statutes § 49-14 (a) provides: "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion,

ment statute, violates his state constitutional right to trial by jury by limiting the determination of damages to a court hearing. Second, he claims that the trial court improperly concluded that the plaintiff mortgagee acted reasonably despite an allegedly considerable delay in proceeding to judgment. We affirm the decision of the trial court.

Certain facts are relevant to this appeal. In 1987, the defendants executed a mortgage deed on property they owned to Connecticut Bank and Trust Company (CBT). In January, 1989, Guttman transferred his interest in the property to Voll. In March, 1990, the defendants defaulted on their obligations to make payment on the debt evidenced by a promissory note and secured by the mortgaged property, and, in the fall of 1990, CBT commenced a foreclosure action. In January, 1991, CBT was declared insolvent. The Federal Deposit Insurance Corporation (FDIC) was appointed receiver of CBT, and conveyed CBT's assets to a bridge bank, New Connecticut Bank and Trust Company, N.A. (New CBT). By motion filed in April, 1991, New CBT was substituted as the plaintiff in the foreclosure action against the defendants. In the same motion, the plaintiff demanded that the defendants disclose a defense. The defendants did not disclose any defense. In July, 1991, FDIC was appointed as receiver of New CBT. The FDIC was substituted as plaintiff in the foreclosure action by motion dated April, 1992.

except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment."

General Statutes § 49-14 (b) provides: "Upon the motion of any party and for good cause shown, the court may refer such motion to a state referee, who shall have and exercise the powers of the court with respect to trial, judgment and appeal in such case."

Also in July, 1991, Voll filed for bankruptcy. That same month, the attorney for Guttman withdrew his appearance. The stay with respect to the bankruptcy proceedings was lifted in February, 1992. Shortly thereafter, new counsel for Guttman entered an appearance. In April, 1992, the FDIC filed a motion for default for failure to disclose a defense against the defendants, which was granted.

On June 26, 1992, the trial court rendered a judgment of dismissal for dormancy pursuant to Practice Book § 251. The dismissal was subsequently opened and the case returned to the docket pursuant to the FDIC's motion dated August 7, 1992.

In October, 1993, the FDIC moved for a judgment of strict foreclosure. The defendants did not oppose the motion for judgment, assert the equitable defense of laches, or object to the inclusion of interest in the judgment debt.

On November 2, 1993, the court rendered a judgment of strict foreclosure. The court found a debt of $506,626.07, and awarded attorney's fees of $3250, and title search fees of $150, for a total debt of $513,776.07. Law days were set to commence on January 25, 1994. The defendants did not seek to reargue the motion for judgment or to open the judgment, and did not appeal from the judgment of strict foreclosure. The defendants did not redeem on their law days, and title to the mortgaged property vested in the FDIC on January 29, 1994.

On January 31, 1994, the FDIC moved for a deficiency judgment pursuant to General Statutes § 49-14. The defendants did not claim that motion to the jury trial list, or tender a jury fee to the clerk of the court. Guttman did file an objection to the plaintiff's motion, however, arguing that (1) the Connecticut deficiency judgment statute deprived him of his constitutional

right to a jury trial, (2) the FDIC had unreasonably delayed proceeding to a judgment and, therefore, a deficiency judgment would not be equitable, (3) the remedy of a deficiency judgment should not be available against him because he had transferred his interest in the property to Voll before the start of the foreclosure action, and (4) the FDIC had waived its right to proceed to a deficiency judgment against him.

The court found that deficiency procedures in Connecticut were not unconstitutional and did not violate Guttman's right to a jury trial because a deficiency hearing is part of an equitable foreclosure action. The court also rejected Guttman's defense of unreasonable delay by the FDIC, specifically finding that the FDIC had not caused any unreasonable or inexcusable delay,[3] and that, even if it had, Guttman's claim of undue delay had not been timely asserted.[4] The court also found that § 49-14 does not by its terms limit the authority to enter a deficiency judgment against only the obligors who were owners of the property at the time of the foreclosure proceedings and that Guttman's previous failure to contest the debt during the foreclosure proceedings barred him from claiming that the FDIC had no right to obtain a deficiency judgment against him. Finally, the court found that there was no evidence that the FDIC had waived its right to a deficiency judgment against Guttman.

The court found the total debt as of the day title vested in the FDIC to be $613,423.59, which included principal, interest, attorney's fees, appraisal fees, and

[3] The court found that "there have been delays occasioned by a number of circumstances beyond the control of the [FDIC], and perhaps some of that the [FDIC] could with greater diligence have minimized. The court finds, however, that none of the delays was so long as to be unreasonable. This claim by the defendant is without merit."

[4] The court stated: "[T]his defense was not raised as a defense in the foreclosure proceeding, so it is not properly raised here."

title search fees that had been awarded at the time of the judgment of strict foreclosure, plus additional interest, attorney's fees, costs and real estate taxes encumbering the property. The court also found the value of the property on the date that title vested in the FDIC to be $230,000, leaving a deficiency of $383,423.59. A deficiency judgment against Guttman in that amount was rendered.

## I

### CONSTITUTIONAL ISSUE

Guttman attacks the constitutionality of § 49-14 on the ground that it deprives him of his right to a jury trial under article first, § 19, of the Connecticut constitution. Before we begin our analysis, we note that "[a] party who challenges the constitutionality of a statute 'bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality.' " *State* v. *Merdinger*, 37 Conn. App. 379, 382, 655 A.2d 1167 (1995). In addition to showing that § 49-14 is unconstitutional beyond a reasonable doubt, Guttman must show that "its effect or impact on him adversely affects a constitutionally protected right which he has." *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 569, 409 A.2d 1020 (1979). Finally, "[w]hile the courts may declare a statute to be unconstitutional, our power to do this should 'be exercised with caution, and in no doubtful case.' " *Fair Cadillac-Oldsmobile Isuzu Partnership* v. *Bailey*, 229 Conn. 312, 316, 640 A.2d 101 (1994).

"[T]he area of fundamental civil liberties . . . includes all protections of the declaration of rights contained in article first of the Connecticut constitution . . . ." *Horton* v. *Meskill*, 172 Conn. 615, 641, 376 A.2d 359 (1977). Article first, § 19, of the Connecticut constitution provides in relevant part that "[t]he right of

trial by jury shall remain inviolate . . . ." This particular clause has been in existence since 1818, the year Connecticut adopted its constitution. See W. Horton, The Connecticut State Constitution, A Reference Guide (1993), p. 75. Article first, § 19, has been held to provide two basic rights. First, it provides for the right to a trial by jury for those cases that were triable, or that are similar to cases that were triable, by jury in 1818. *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 49–53, 578 A.2d 1054 (1990). Second, it protects the jury trial from procedural changes that in fact change the substance of the institution. *Spitzer* v. *Haims & Co.*, 217 Conn. 532, 539–41, 587 A.2d 105 (1991). "Because at common law only legal claims were tried to a jury, the state constitutional right to a trial by jury does not extend to equitable claims." *Associated Investment Co. Ltd. Partnership* v. *Williams Associates IV*, 230 Conn. 148, 153, 645 A.2d 505 (1994).

"[I]n determining whether a party has a right to a trial by jury under the state constitution . . . we 'must ascertain whether the action being tried . . . has roots in the common law, and if so, whether the remedy involved was one in law or equity. If the action existed at common law and involved a legal remedy, the right to a jury trial exists and the legislature may not curtail that right either directly or indirectly.' " Id., 153–54. "Consequently, statutory actions established since the adoption of the constitution of 1818 ordinarily fall outside the scope of the provision, unless, perhaps, the new remedy constitutes a modification of existing remedies, so vital as to unduly limit and violate the right of trial by jury." (Internal quotation marks omitted.) Id., 154. " 'The test is whether the issue raised in the action is substantially of the same nature or is such an issue as prior to 1818 would have been triable to a jury.' " *Skinner* v. *Angliker*, 211 Conn.

370, 375, 559 A.2d 701 (1989). This test is "flexible and may require a jury in a new cause of action, not in existence in [1818], if it involves rights and remedies of the sort traditionally enforced in an action at law or if its nearest historical analogue is an action at common law." Id., 377.

Guttman concedes that a deficiency judgment hearing is procedurally part of a foreclosure action, and that a foreclosure action is an equitable proceeding and is not triable to a jury. He argues, however, that a deficiency proceeding is analogous to a suit on a note, which was triable by jury in 1818, and, because the legislature has in § 49-14 tied the deficiency judgment action to an existing foreclosure case, his right to have the deficiency proceeding tried to a jury has been abrogated. We disagree.

Connecticut enacted its first deficiency judgment statute in 1833. *Farmers & Mechanics Savings Bank* v. *Durham Realty, Inc.*, 34 Conn. App. 204, 207, 640 A.2d 1017 (1994). Prior to 1818, therefore, there was no such proceeding. " 'At common law, a mortgagee was required to elect between a foreclosure action or an action on the underlying debt.' " *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 278 n.10, 630 A.2d 1010 (1993). If the mortgagee recovered successfully on the debt, "the mortgage [was] released. If [the mortgagee chose] to take the land and to make it his own absolutely, whereby the mortgagor [was] totally divested of his equity of redemption, the debt [was] thereby paid and discharged: And if it eventually prove[d] insufficient to raise the sum due, it [was] the mortgagee's own fault, and at his risk." *M'Ewen* v. *Welles,* 1 Root (Conn.) 202, 203 (1790).

It was, therefore, precisely because the entry of judgment of foreclosure precluded any further common law

proceedings on the note that the legislature in 1833 created the remedy of the deficiency judgment as the only available means of satisfying a mortgage debt when the security was inadequate to make the plaintiff whole. *New England Savings Bank* v. *Lopez*, supra, 227 Conn. 278 n.10, citing D. Caron, Connecticut Foreclosures (2d Ed. 1989) § 9.05A, p. 158. In other words, the 1833 statute lifted the bar at common law on any further action on the mortgage debt after foreclosure. *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 164–65, 659 A.2d 138 (1995); *Equitable Life Assurance Society* v. *Slade*, 122 Conn. 451, 454, 190 A. 616 (1937). Guttman's argument, therefore, that an action on a promissory note is the historical analogue of a deficiency proceeding is incorrect.

The common law rule requiring a creditor to choose between an action at law on the note and an action at equity by foreclosing remains in effect. "It is well established that a mortgagee has two separate and distinct causes of action against a defaulting mortgagor. A mortgagee may pursue an action at law for the amount due on the promissory note, or it may pursue its remedy in equity and foreclose on the mortgage. . . . The mortgagee may also pursue both of these remedies simultaneously in one consolidated foreclosure suit. . . . The only restriction on the mortgagee's election of remedies is contained in General Statutes § 49-1, which provides that '[t]he foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure . . . .' General Statutes § 49-14 furnishes an exception to § 49-1 by providing that, '[a]t any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment.' . . . Thus, a mortgagee who elects to pursue

his right of foreclosure of a mortgage and his right to obtain payment of a promissory note may also, in the same action, seek a deficiency judgment. When a deficiency judgment is sought, the plaintiff may recover the difference between the amount due on the underlying debt and the amount received upon foreclosure." (Citations omitted.) *People's Bank* v. *Bilmor Building Corp.*, 28 Conn. App. 809, 816–17, 614 A.2d 456 (1992).

We recognize that deficiency proceedings are in some respects functionally similar to actions on promissory notes because both enable a creditor to collect the full amount owed him by a debtor. This court has in the past stated that "the deficiency judgment procedure, although procedurally a part of the foreclosure action, serves the separate function of providing for recovery on the balance of the note which was not satisfied by the strict foreclosure" and that "the deficiency judgment is the functional equivalent of a suit upon the note . . . ." *Maresca* v. *DeMatteo*, 6 Conn. App. 691, 696, 506 A.2d 1096 (1986). Furthermore, our Supreme Court has compared deficiency judgment hearings to suits for collection. *Eichman* v. *J & J Building Co.*, 216 Conn. 443, 453, 582 A.2d 182 (1990).

As shown in the legislative history, however, deficiency proceedings are not, and never have been, independent actions on the debt. Rather, they are "part of the main foreclosure suit." *People's Bank* v. *Bilmor Building Corp.*, supra, 28 Conn. App. 822. A deficiency judgment proceeding is a part of the foreclosure action, but is distinct from, although dependent on, the common law, nonstatutory process of strict foreclosure. *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, supra, 233 Conn. 172. It is "complementary to, the traditional and equitable common law action." Id., 172.

A deficiency proceeding is not an independent action because "a request for a deficiency judgment in a fore-

closure action is brought by written motion and not by service of process. . . . A deficiency judgment provides a means for a mortgagee to recover any balance due on the mortgage note that was not satisfied by the foreclosure judgment. . . . It is the 'only means of satisfying a mortgage debt when the security is inadequate to make the foreclosing plaintiff whole.' " (Citation omitted.) *People's Bank* v. *Bilmore Building Corp.*, supra, 28 Conn. App. 822. Furthermore, a deficiency proceeding has a very limited purpose. "In the hearing contemplated under § 49-14 to obtain a deficiency judgment, the court, after hearing the party's appraisers, determines the value of the property and calculates any deficiency. This deficiency judgment procedure presumes the amount of the debt as established by the foreclosure judgment and merely provides for a hearing on the value of the property." *First Bank* v. *Simpson,* 199 Conn. 368, 373, 507 A.2d 997 (1986).

Since the passage of the first deficiency judgment statute in 1833, the mortgagee's right to a deficiency judgment has always been coupled with some provision for fixing the actual value of the property as of the date of the foreclosure, as a basis of valuation for determining any claimed deficiency.[5] *Equitable Life Assurance Society* v. *Slade,* supra, 122 Conn. 454. The 1833 statute provided for a determination of this value by the court before which the action was pending. Id. This continued to be the function of the court until 1878, when it became the function of three "disinterested appraisers." Id., 454–55. So "that there might be no doubt that the court's function in determining value in all its aspects had been transferred to the appraisers, the act provided: 'such appraisal shall be final and conclusive as to the value of said mortgaged property.' " Id.,

---

[5] For a more complete discussion of the legislative history of deficiency judgment proceedings in Connecticut, see *Federal Deposit Ins. Corp.* v. *Hillcrest Associates,* supra, 233 Conn. 164–70.

455. "The provision . . . first appearing in . . . the Revision of 1902, permitting the court to enter a judgment for the deficiency between the debt and the appraisal, was obviously to do away with the necessity of bringing a separate action to satisfy the debt, and in no way affected the power in the appraisers to determine the value of the mortgaged property. Thus, under the statute as it existed from 1833 to 1878, the court's determination of value was conclusive upon the parties because it was a question of fact which [our Supreme Court] would not review." Id.

In 1979, however, the procedure that allowed disinterested appraisers to determine the value of the property was declared unconstitutional because there was no hearing at which the defendant could present evidence as to value. *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 576–77, 409 A.2d 1020 (1979). The statute was declared unconstitutional on the ground that the failure to provide for an evidentiary hearing violated due process. The legislature accordingly amended the statute to provide that the court hears evidence on the value of the property from both parties and establishes a conclusive valuation of the property. That amendment resulted in the present § 49-14. *Bank of Stamford* v. *Alaimo*, 31 Conn. App. 1, 7, 622 A.2d 1057 (1993). The defendant's reliance on *Society for Savings* v. *Chestnut Estates, Inc.*, supra, 576–77, to bolster his claim that § 49-14 violates his right to a jury trial is therefore misplaced.

As discussed previously, in an action on a promissory note, unlike in the deficiency judgment procedure, the issues of whether any debt is owing and, if so, the amount of the debt owed must be resolved. Those issues, not the issue of property value, are resolved by a jury in an action on a note. In a deficiency proceeding, however, the judgment of foreclosure has already

determined that a debt is owed and the amount of that debt. Those issues are not relitigated in the deficiency hearing.

The mere fact, therefore, that a deficiency proceeding may result in a personal judgment against the debtor for the amount of the debt unsatisfied by the foreclosed property does not convert that portion of the equitable foreclosure proceedings into an action at law. We conclude that because a deficiency proceeding is not substantially similar to any common law claim triable to a jury in 1818, Guttman's claim that § 49-14 violates article first, § 19, fails.

## II

### LACHES

Guttman claims that the trial court improperly found that the FDIC acted reasonably despite the length of time it took the FDIC and its predecessors to proceed to judgment. Guttman argues that the delays were unreasonable because, during the three years between the filing of the complaint and the motion for strict foreclosure, the debt substantially increased while the value of the property substantially decreased. Essentially, Guttman is asserting the equitable doctrine of laches. We are not persuaded, and, even if we were, we conclude that Guttman's claim of laches was untimely made.

"Laches consists of an inexcusable delay which prejudices the defendant." *Danaher* v. *C. N. Flagg & Co.*, 181 Conn. 101, 107, 434 A.2d 944 (1980). "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant." *Kurzatkowski* v. *Kurzatkowski*, 142 Conn. 680, 684–85, 116 A.2d 906 (1955). Absent prejudice to the defendant, the mere lapse of time does not constitute laches.

"A conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law." Id., 684. We cannot say as a matter of law that the trial court was compelled on the facts of this case to conclude that the FDIC had lost its rights against Guttman by laches. Nor can we say that the trial court's findings that most of the delays were beyond the control of the FDIC, and that, although the FDIC could have minimized some of the delays, none was so long as to be unreasonable are unsupported by the record. In fact, some delay in these proceedings was inevitable because there were two federal receiverships and a bankruptcy proceeding against one of the defendants.

Moreover, at no time during the foreclosure proceedings did Guttman claim that he had been prejudiced by any of the delays.[6] At a minimum, Guttman could have filed an answer asserting the doctrine of laches, or asserted the doctrine when New CBT moved that the defendants disclose a defense, or objected to the calculation of debt at the time the FDIC moved for a judgment of foreclosure. Defenses that could have been raised during the foreclosure proceedings may not be raised at the deficiency hearing. *Vignot* v. *Bank of Mystic*, 32 Conn. App. 309, 314, 628 A.2d 1339 (1993); *Bank of Stamford* v. *Alaimo*, supra, 31 Conn. App. 9.

Guttman's claim, therefore, that the trial court should have used the equitable doctrine of laches to preclude the FDIC from moving for a deficiency judgment, fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] We note that in a different real estate market, a delay might have actually benefited the defendant if the value of the property increased during the foreclosure proceedings.