FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF CITYTRUST v. RICHARD E. FONTE ET AL.
(AC 16555)

Schaller, Hennessy and Daly, Js.

---

Argued December 16, 1997—officially released April 28, 1998

*Kerry M. Wisser*, with whom, on the brief, was *Nathan A. Schatz*, for the appellant (defendant Richard Matza).

*Frederic S. Ury*, with whom, on the brief, were *Neal L. Moskow* and *Vincent M. Marino*, for the appellee (substitute plaintiff).

*Opinion*

SCHALLER, J. The defendant Richard Matza[1] appeals from the judgment of the trial court holding him liable

---

[1] The four original defendants in this action were Richard E. Fonte, Paul West, William Riebe and Richard Matza. The action against Fonte and Riebe

on a promissory note. The note was secured by real estate located in Arizona that was disposed of in a trustee's sale proceeding initiated by the plaintiff[2] prior to the commencement of this action. The defendant claims on appeal that the trial court improperly determined (1) that the trustee's sale proceeding of the Arizona property did not bar this subsequent action on the note, (2) the amount of the damages, and (3) that the amount of $35,000 paid by a co-obligor on the judgment rendered against that co-obligor in this action should have been credited against the judgment. We reverse the judgment of the trial court as to the failure to credit the amount paid by the co-obligor and affirm the judgment in all other respects.

The following relevant facts are not in dispute. By a promissory note dated November 7, 1986, the defendant, Richard E. Fonte, Paul West and William Riebe, all Connecticut residents, and Southwest Professional Properties, a Connecticut general partnership, jointly and severally agreed to pay to the order of Citytrust the principal sum of $350,000, together with interest. The promissory note was secured by a deed of trust pertaining to a parcel of real estate located in Pima County, Arizona. A deed of trust is a form of mortgage under Arizona law that allows the mortgaged real estate to be sold by the trustee in a judicially unsupervised trustee's sale or in a judicial foreclosure, at the option of the beneficiary of the trust deed. See Ariz. Rev. Stat. § 33-807.[3] The trustee's sale proceeding requires notice

---

was discharged through bankruptcy, and those defendants were dropped from the case shortly after it commenced. The action against West was resolved prior to trial by a stipulated judgment on June 26, 1996. The action against Matza, the remaining defendant, was thereafter brought to trial and this appeal followed. We refer in this opinion to Matza as the defendant.

[2] This action was brought by the Federal Deposit Insurance Corporation as receiver of Citytrust. The substituted plaintiff is National Loan Investors, L.P.

[3] Section 33-807 of the Arizona Revised Statutes provides in relevant part: "A. By virtue of his position, a power of sale is conferred upon the trustee of a trust deed under which the trust property may be sold, in the manner

by publication and the mailing of notice to each person who has an interest in the trust property. See Ariz. Rev. Stat. §§ 33-808 and 33-809.

The promissory note in question fell into default as of March 1, 1990, when the borrowers failed to pay interest according to the terms of the note. Citytrust declared the note in default and accelerated the terms of the note. A trustee's sale was scheduled for October 23, 1990, in Arizona, and notice was duly given. To induce Citytrust to forbear from proceeding with the trustee's sale, the defendant and the other obligors under the note agreed with Citytrust that they would provide additional security. In return, Citytrust agreed to "continue the Trustee's Sale for a period [of] not less than one hundred eighty [180] days" to allow the obligors further opportunity to sell the property. The additional security provided was a deed of trust encumbering a second parcel of real property located in Pima County, Arizona. Under the forbearance agreement, if the obligors failed to sell the original property on or before April 30, 1991, Citytrust had the right to proceed with a trustee's sale as to both deeded properties. Both properties were ultimately sold by trustee's sale.

The trial court found that the sale of the second property "produced an amount of $20,029.91 which was credited against the principal then balance of $350,000." That credit was applied on March 16, 1993. The trial court concluded that no evidence was introduced as to the actual sale price of the first property. The trial court

provided in this chapter, after a breach or default in performance of the contract or contracts, for which the trust property is conveyed as security, or a breach or default of the trust deed. At the option of the beneficiary a trust deed may be foreclosed in the manner provided by law for the foreclosure of mortgages on real property in which event the provisions of chapter 6 [§ 33-701 et seq.] of this title govern the proceedings. The beneficiary or trustee shall constitute the proper and complete party plaintiff in any action to foreclose a deed of trust. The power of sale may be exercised by the trustee without express provision therefor in the trust deed."

found, however, that the amount of $108,786.09 was credited to the outstanding interest, although it made no specific finding that this amount represented the sale price of the first property. The trial court determined that the sale proceeds from the first property were credited on March 16, 1993.

On August 9, 1991, Citytrust was declared insolvent by the Connecticut commissioner of banking, and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver. The FDIC succeeded to all of Citytrust's right, title and interest in the assets at issue. The present action is pursued by the substitute plaintiff, National Loan Investors, L.P., assignee of the FDIC's interest by virtue of an assignment of the promissory note and other appropriate documents in September, 1994. Both Fonte and Riebe received discharges in bankruptcy of the underlying debt in this action. The FDIC withdrew the action against them on June 24, 1993. On June 26, 1996, West settled the FDIC's action against him. That settlement, in the form of a stipulated judgment, was presented to the trial court. The stipulation states that West "will immediately tender a payment . . . of $35,000" to the plaintiff in partial satisfaction of the judgment against him in this action.

The present action was brought in two counts and process was served on the defendant on June 2, 1993. In the first count, the plaintiff sought to collect from the defendant the balance due under the promissory note dated November 7, 1986, in the original amount of $350,000. In the second count, the plaintiff alleged breach of the October 23, 1990 forbearance agreement, which obligated the defendant to sell the Arizona property on or before April 30, 1991, as an inducement for Citytrust's forbearance. That default, the plaintiff claimed, entitled the plaintiff to proceed on the promissory note. As relief under both counts, the plaintiff claimed money damages, costs, attorney's fees, and

"such other relief in law and/or in equity as this court deems just and proper." The plaintiff further gave notice that "the plaintiff intends to seek satisfaction of any deficiency judgment rendered in its favor by obtaining a wage execution pursuant to Connecticut Public Act No. 83-581." The defendant filed numerous special defenses including lack of jurisdiction, waiver of the right to collect payment, estoppel, the fact that "any recovery by the plaintiff is subject to a setoff in the amount of the fair market value of the trust property on the date of the sale or the sale price at the trustee's sale, whichever is higher," failure to bring the action within the time permitted by law and full satisfaction of the defendant's obligations.

The trial court found that both trust properties were sold at trustee's sales. The sale of the second trust property resulted in a $20,029.91 credit against the principal balance of $350,000, leaving an unpaid principal balance of $329,970.09. The sale of the first trust property resulted in a credit of $108,786.09 against the outstanding interest. The amount of interest accrued at the time of judgment was found to be $115,362.97. Attorney's fees in the amount of $19,957 were allowed. The total amount of the trial court's judgment was $465,290.06.

The trial court first determined that according to the terms of the note itself and in accordance with choice of law theory, Connecticut law should be applied to the question of the validity and timeliness of the present action. The court then concluded that the action on the note was properly brought and that General Statutes § 49-1[4] did not bar the action. Specifically, the trial court

---

[4] General Statutes § 49-1 provides in relevant part: "The foreclosure of a mortgage is a bar to any further action upon the mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure and also against any person or persons upon whom service of process to constitute an action in personam could have been made within this state at the commencement of the foreclo-

stated: "No argument is advanced that in an Arizona type of foreclosure action the courts of the state of Arizona could have accomplished 'an action in personam' as against a Connecticut resident through any type of service of process in this state. The defendant does not properly advance this proposition. Under Connecticut law, an Arizona in rem action, a foreclosure, would not bar further action against a person not personally served." The trial court went on to state that even if the trustee's sale proceeding was considered a foreclosure by sale for purposes of deficiency proceedings, § 49-1 would not be a bar under *BayBank Connecticut, N.A.* v. *Thumlert*, 222 Conn. 784, 787, 610 A.2d 658 (1992). The court determined that waiver and estoppel did not apply and that while the defendant was entitled to a setoff for the proceeds that were recovered in the trustee's sales, the defendant produced no evidence concerning either the fair market value of the properties or any deprivation of his rights with respect to the trustee's sales.

I

We first address the principal issue that is raised in this appeal, namely, whether the present action, which both parties contend is an independent suit on the promissory note rather than a deficiency proceeding, is barred by the provisions of § 49-1 because it was instituted some two and one-half months after the date of the trustee's sales in Arizona.

It is undisputed that the only actions that could be interpreted as foreclosures in this case were the nonjudicial trustee's sales conducted pursuant to Ariz. Rev.

---

sure; but the foreclosure is not a bar to any further action upon the mortgage debt, note or obligation as to any person liable for the payment thereof upon whom service of process to constitute an action in personam could not have been made within this state at the commencement of the foreclosure. . . ."

Stat. § 33-807 et seq. Those statutes allow the beneficiary of the trustee's deed to choose between two alternate types of proceedings to recover the value of the security pledged to secure the indebtedness. The first type of proceeding, invoked in this case, is the trustee's sale, which requires publication notice in addition to mail notice to interested parties. The second type, not invoked here, is a judicial foreclosure. In the trustee's sale, no parties are served by means of usual process because no court proceeding is instituted. In the judicial type of foreclosure, the only method of service is by personal delivery or by delivery to the person's house or usual place of abode. See Rule 4.1 of the Arizona Rules of Civil Procedure. In either proceeding, there is no provision for bringing in for deficiency purposes those individual obligors who may be personally liable under the note.

Section § 33-814 of the Arizona statutes provides for a separate action to be maintained by the creditor to recover any deficiency.[5] Under the provisions of the deficiency statute, when read together with Arizona's broad "long arm" service of process rule,[6] there is no

---

[5] Section 33-814 of the Arizona Revised Statutes provides in relevant part: "A. Except as provided in subsections F and G of this section, within ninety days after the date of sale of trust property under a trust deed pursuant to § 33-807, an action may be maintained to recover a deficiency judgment against any person directly, indirectly or contingently liable on the contract for which the trust deed was given as security including any guarantor of or surety for the contract and any partner of a trustor or other obligor which is a partnership. In any such action against such a person, the deficiency judgment shall be for an amount equal to the sum of the total amount owed the beneficiary as of the date of the sale, as determined by the court less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher. A written application for determination of the fair market value of the real property may be filed by a judgment debtor with the court in the action for a deficiency judgment or in any other action on the contract which has been maintained. . . ."

[6] Rule 4.2 (a) of the Arizona Rules of Civil Procedure authorizes long arm jurisdiction by stating that "[a] court of this state may exercise personal

question that the defendant could have been served personally in Connecticut. *A. Uberti & C.* v. *Leonardo*, 181 Ariz. 565, 892 P.2d 1354 (en banc), cert. denied, 516 U.S. 906, 116 S. Ct. 273, 133 L. Ed. 2d 194 (1995) (personal jurisdiction over nonresident defendant allowed because defendant had "sufficient minimum contacts with Arizona" and exercise of jurisdiction over him was "fair and reasonable").

In the present case, however, no deficiency proceeding was instituted in Arizona. Moreover, no action designated exclusively as a deficiency proceeding under General Statutes § 49-14[7] was instituted in Connecticut. It is clear, however, that because Connecticut's deficiency proceeding is not a separate action, but rather a part of the foreclosure action,[8] any proceeding in Connecticut to recover a deficiency would have to be brought as a separate action. We note that although both parties have designated the present action as a

jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States. . . ."

[7] General Statutes § 49-14 (a) provides: "At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing. Such hearing shall be held not less than fifteen days following the filing of the motion, except as the court may otherwise order. At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiff's claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment."

[8] "As shown in the legislative history . . . deficiency proceedings are not, and never have been, independent actions on the debt. Rather, they are part of the main foreclosure suit. . . . A deficiency judgment proceeding is a part of the foreclosure action, but is distinct from, although dependent on, the common law, nonstatutory process of strict foreclosure. . . . It is complementary to, the traditional and equitable common law action." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, 44 Conn. App. 439, 444, 689 A.2d 1150 (1997), aff'd, 244 Conn. 189, 708 A.2d 1371 (1998); see General Statutes § 49-14.

separate suit on the note, in actuality, the action could serve as a deficiency proceeding and even refers to a potential deficiency in the claims for relief. At the trial of this case, the trial court limited the plaintiff's recovery to the deficiency, just as it would in a deficiency proceeding under Connecticut law.

Because, for purposes of trial, the parties and the court treated the present action as a separate suit on the note, we will consider it as such. Moreover, for purposes of this discussion only, we will treat the Arizona trustee's sales as "foreclosures" in substance, although they are not specifically designated as such in the Arizona statutes.[9] The pertinent statutes differentiate between the alternate remedies as a trustee's sale and a foreclosure respectively. Trustee's sales are not designated as foreclosures in the strict sense of the word, and the term foreclosure is confined to the judicial proceeding permissible under the statutes. We note, however, that the Arizona courts occasionally refer to the sale proceeding as a type of foreclosure. See, e.g., *Valley National Bank of Arizona* v. *Kohlhase*, 182 Ariz. 436, 897 P.2d 738 (Ariz. App. 1995). If we were to construe the trustee's sale proceeding as other than a foreclosure, it is evident that § 49-1 would not apply to bar a separate suit on the note. We believe, however, that even considering the trustee's sale to be a variation of a judicial foreclosure for the purposes of argument, the result is the same in this case. Under either interpretation, § 49-1 does not bar the present action.

We reach that result because, contrary to the defendant's assertions, the defendant was not amenable to personal service in Connecticut at the time the "foreclosure" was commenced. Section 33-807 of the Arizona statues, which governs the trustee's sale procedure, provides for publication notice of the trustee's sale and

---

[9] See footnote 3.

notice by mail to "interested parties." See Ariz. Rev. Stat. §§ 33-808 and 33-809. That procedure consists solely of an auction sale and is not accompanied by any determination of personal liability on the part of the obligors on the underlying debt. No procedure for service of legal process on any parties is provided. Contrary to the defendant's argument, the obligors would not reasonably anticipate being haled into court in the course of that proceeding. After the trustee's sale or foreclosure, a separate action could be maintained to determine any deficiency. Ariz. Rev. Stat. § 33-814. For that to occur under Arizona law, a separate action would have to be instituted within ninety days after the sale or foreclosure. Id. At that point, but not before, the defendant could anticipate being haled into court.

It is not sufficient to bar the plaintiff from maintaining the present action simply because *at some later time,* after the trustee's sale, the defendant could have been personally served *if* the plaintiff had brought a deficiency action in Arizona. Rather than proceed in Arizona with a deficiency action, the plaintiff elected to sue on the note in Connecticut prior to the expiration of the ninety day period for bringing a deficiency action in Arizona. The trial court correctly determined that § 49-1 does not bar the present action because the defendant is a "person . . . upon whom service of process to constitute an action in personam could not have been made within this state at the commencement of the foreclosure. . . ."[10] *CTB Realty Ventures XXII, Inc.*

---

[10] The defendant raises a number of arguments, including (1) under Arizona law, creditors must elect either to proceed with foreclosure or to sue on the note and (2) under Connecticut statutory or common law, creditors must elect either proceeding, but not both. Those arguments are unavailing because of our determination that the defendant was not amenable to personal service at the outset of the trustee's sale procedure. The defendant also argues that if the present action is construed as a deficiency proceeding, it is untimely because it was not brought within thirty days. We need not reach this issue because we construe the action as a separate suit on the note. We note, however, that under our Supreme Court's decision in *BayBank*

v. *Markoski*, 33 Conn. App. 388, 392, 636 A.2d 379, cert. granted, 228 Conn. 929, 640 A.2d 115 (1994) (appeal withdrawn July 18, 1994). As the trial court noted, in fact, the defendant did not make that claim at trial. See Practice Book § 60-5.[11]

## II

The defendant next claims that the trial court improperly determined the amount of damages in that (1) it failed to find the fair market value of the properties sold by trustee's sale and (2) it failed to find the sale price of the second parcel sold. It is undisputed that the trial court found, on the basis of the evidence produced, that one sale resulted in proceeds of $20,029.91, which were credited to the principal balance, and the other resulted in proceeds of $108,786.09, which were credited to the interest owing. No finding was made as to the market value of either property or the sales price of the second property.

Under Connecticut law, which both parties agree applies to this issue,[12] it is well established that a mortgagor is entitled to a credit against the amount of the debt where mortgaged property is foreclosed to satisfy a debt. *People's Holding Co.* v. *Bray*, 118 Conn. 568, 571, 173 A. 233 (1934). In calculating a deficiency judgment, a mortgagor is not entitled to a credit for the fair market value of the property sold, but rather is entitled to a credit for the amount of the sale proceeds. *New England*

---

*Connecticut, N.A.* v. *Thumlert*, supra, 222 Conn. 784, it is doubtful that the thirty day time limit would apply to the situation in this case.

[11] Practice Book (1998 Rev.) § 60-5 (formerly § 4061) provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ."

[12] Arizona law provides that a deficiency action is governed by the law applicable to the underlying debt, i.e., the promissory note, not the law of the situs of the property. *Cardon* v. *Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 206, 841 P.2d 198 (1992). Here, the promissory note, signed by the defendant, provided that it is "governed and construed in accordance with the laws of the State of Connecticut."

*Savings Bank* v. *Lopez*, 227 Conn. 270, 277, 630 A.2d 1010 (1993); see General Statutes § 49-28; *Fairfield Plumbing & Heating Supply Corp.* v. *Kosa*, 220 Conn. 643, 646 n.8, 600 A.2d 1 (1991). The deficiency is calculated by subtracting the sale proceeds from the debt. *Cronin* v. *Gager-Crawford Co.*, 128 Conn. 688, 692, 25 A.2d 652 (1942). The defendant is not entitled to have the entire sale price applied to reduce the debt. Rather, in arriving at the sale proceeds to be applied, the court determines and allows for the expenses incurred in connection with the sale. See *Federal Deposit Ins. Corp.* v. *Voll*, 38 Conn. App. 198, 202–203, 660 A.2d 358, cert. denied, 235 Conn. 903, 665 A.2d 901 (1995).

In the present case, the plaintiff offered evidence of the amount of sales proceeds credited to the note. Since this action was not a deficiency proceeding, the plaintiff was not required to establish the fair market value of the properties. Concerning the evidence of the sales proceeds, the trial court's finding is tested by the clearly erroneous standard. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). "[The clearly erroneous standard] involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." Id.

The trial court chose to credit the evidence that was offered by the plaintiff. That evidence was sufficient to allow the trial court to determine the amount of sales proceeds from the trustee's sales.[13] If the defendant

---

[13] At trial, the plaintiff's witness, William C. Smith, vice president of National Loan Investors, L.P., offered the following testimony regarding the amount of sales proceeds from the trustee's sales during direct examination:

chose not to challenge the plaintiff's evidence as to the sales proceeds of the properties, that was the defendant's prerogative. The defendant, however, cannot now legitimately claim that the plaintiff's evidence was insufficient to provide a basis for the trial court's findings.

"Q. And what is the status of the loan evidenced by this promissory note?

"A. It's unpaid. It's in default.

"Q. Do you have knowledge as to the balance owed on this note?

"A. I do.

"Q. What is the balance?

"A. The balance is $445,333.06. That's through today. . . .

"Q. Mr. Smith, of that sum how much represents a principal balance on this note?

"A. Principal balance is $329,970.09. . . .

"Q. Of that total sum, how much of that represents interest?

"A. The interest accrual is $115,362.97. . . .

"Q. How did you calculate that interest, Mr. Smith?

"A. The promissory note provided for a variable interest rate, varying the amount of the prime, and the note provided for 3 percent over prime. And I calculated the interest accrual utilizing the variable interest prime rate through today.

"Q. You did that yourself?

"A. Yes. . . ."

The following is Smith's testimony during cross-examination by the defendant:

"Q. [O]n page two of the [customer loan history] card there is a principal reduction from $350,000 to $329,970.09. Is that correct?

"A. Yes.

"Q. And what does that represent?

"A. That represents together with the next entry of the interest payment of $108,000, the application of the bid from the trustee's sale, the credit.

"Q. So, therefore, what that means to you is that the FDIC, which conducted a trustee's sale on this property and bid on this property, gave the obligors credit for the amount that was bid on at that sale?

"A. Yes. . . .

"Q. [I]t appears to me that there was a credit given of $20,029.91. And that was the only credit. Isn't that correct?

"A. The second credit is on page three.

"Q. But that doesn't reduce the balance.

"A. It reduces the interest accrual. The reference is in interest payment on the same day as the principal reduction. . . .

"Q. [T]he trustee's deed seems to indicate that the sale price that the FDIC paid for this property was $18,759?

"A. That's what it reads.

## III

The defendant finally claims that the judgment should have been reduced by the sum of $35,000 paid by West pursuant to the stipulated judgment. The plaintiff agrees with the defendant's calculation. Accordingly, the amount of the judgment must be reduced by the sum of $35,000, resulting in a corrected amount of $430,290.06.

The judgment is reversed in part and the case remanded with direction to render judgment in favor of the plaintiff in the amount of $430,290.06. In all other respects the judgment is affirmed.

In this opinion the other judges concurred.

"Q. Could you reconcile that?

"A. The FDIC credited the account for the fair market value of the property to 70 percent less the outstanding property taxes.

"Q. Even though it bought it at $18,759?

"Q. And how do you know that the FDIC did that? Did what you just said?

"A. From a memo within the file that we produced to you. . . .

"Q. So it's your position that the $108,786.09 plus the $20,029.91 is a combination of what they paid for the property less and in addition to their assessment of the fair market value of the property, 70 percent of fair market value.

"A. The appraised value of the property less taxes, times 70 percent.

"Q. And appraised by whom?

"A. Appraisers."