[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR DEFICIENCY JUDGMENT
On December 18, 1995 the then plaintiff obtained a judgment of strict foreclosure as to a 5 unit apartment building owned by defendants Gregory and Rosemary Thompson (Thompsons) at 389 New Britain Road in Berlin, Connecticut (Property). At that time the court found the property to have a fair market value of $202,000, found the debt of the Thompsons upon the note and mortgage to be in the amount of $229,838.26, and awarded attorney's fees of $2,000, an appraiser's fee of $2,500 and a title search fee of $150. The law day was originally set for April 29, 1996.
Thereafter it was extended a total of 5 times, sometimes at the Thompsons' request, sometimes at the request of the then plaintiff, once by stipulation of the plaintiff and the Thompsons, always without objection. A major purpose of the extensions was to allow an opportunity for the parties to negotiate a resolution. The property was also encumbered by a subsequent mortgage held by another defendant. The law days finally ran on September 11, 1997.
The suit was initiated by the Federal Deposit Insurance Corporation, as Receiver for The Bank Hartford, Inc. who were succeeded as the plaintiff first by BTD-1996 NPC 1, L.L.C. and then by the current plaintiff and assignee of the note and mortgage of the Thompsons, LR2-A Limited partnership (LR2). Several different entities serviced the account during its ownership by the earlier plaintiffs. CT Page 13343
LR2 was substituted as the plaintiff in October, 1997 and filed a motion for deficiency judgment within 30 days of title vesting in it. The Thompsons filed an objection to same in January, 1998. The hearing upon the deficiency judgment motion was postponed several times at the parties request and held in late June, 1998. Both LR2 and the Thompsons filed subsequent briefs in mid-July, 1998. The calculations contained on the Deficiency Worksheet filed at the hearing are not in contest but the value of the property on the date of vesting is contested, as is the equity of LR2 obtaining a deficiency judgment.
General Statutes Section 49-14 provides in pertinent part: "DEFICIENCY JUDGMENT. (a) At any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment. Such motion shall be placed on the short calendar for an evidentiary hearing . . . At such hearing the court shall hear the evidence, establish a valuation for the mortgaged property and shall render judgment for the plaintiff for the difference, if any, between such valuation and the plaintiffs claim. The plaintiff in any further action upon the debt, note or obligation, shall recover only the amount of such judgment."
At that evidentiary hearing "the court, after hearing the party's appraisal, determines the value of the property and calculates any deficiency. This deficiency judgment procedure presumes the amount of the debt as established by the foreclosure judgment and merely provides for a hearing on the value of the property." First Bank v. Simpson, 199 Conn. 368, 373,507 A.2d 997 (1986).
The Thompsons claim that the delay of LR2 and its predecessors in interest in negotiating with them should reduce or preclude LR2's deficiency claim. Specifically, they claim that they wished to resolve their debt both before and after the December, 1995 judgment of foreclosure in some fashion but were unable to make progress because the loan went through a succession of owners and servicers during the period from mid-1994 to late 1997. They rely upon the court's equitable powers, under the precedent of Citicorp Mortgage. Inc. v. Upton,42 Conn. Sup. 302, 616 A.2d 1179 (1992).
The Thompsons now seek, for the first time, to have the court reduce the debt amount established at the time of the December, CT Page 13344 1995 foreclosure judgment because of conduct prior to that date by LR2's predecessor(s). The request is untimely raised. Neither the amount of the debt nor the fact of it are litigated again at the deficiency hearing. Federal Deposit Ins. Co. v. Voll,38 Conn. App. 198, 208-09, 660 A.2d 358, cert. denied,235 Conn. 903, 665 A.2d 901 (1995). "[A]t no time during the foreclosure proceedings did [defendant] claim that he had been prejudiced by any of the delays. At a minimum, [defendant] could have filed an answer asserting the doctrine of laches, or asserted the doctrine when [plaintiff] moved that the defendants disclose a defense, or objected to the calculation of debt at to time the [plaintiff] moved for a judgment of foreclosure. Defenses that could have been raised during the foreclosure proceedings may not be raised at the deficiency hearing." (internal citations ommitted).Federal Deposit Ins. Co. v. Voll, supra, 38 Conn. App. 211.
The Thompsons' also raise an equitable claim of unreasonable delay by plaintiffs after the initial judgment, which sounds in laches. The principles of equity may apply, to be exercised within the court's discretion, in foreclosure proceedings. Hammv. Taylor, 180 Conn. 491, 497, 429 A.2d 946 (1980).
"Laches consists of an inexcusable delay which prejudices the defendant. Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. Absent prejudice to the defendant the mere lapse of time does not constitute laches."(internal citations and quotations omitted). FederalDeposit Ins. Co. v. Voll, supra, 38 Conn. App. 210. But the evidence does not establish such an inexcusable delay by LR2 and its predecessors in interest.
Unlike the Upton case, these property owners never offered a deed in lieu of sale to stop the debt from accumulating. Nor could they, given the existence of the second mortgage. Nor does the record disclose any objection by the Thompsons to any of the extensions of the law dates. Their counsel concedes that the extensions were to allow for settlement attempts. And while the sales of the underlying instruments may have led to some redundancy in negotiations and discussions, the resulting delay is understandable. The court does not find any inexcusable delays under these circumstances.
Nor have the Thompsons proven a breach of a duty of good faith and fair dealing in contractual performance on the part of CT Page 13345 LR2 or its predecessors. They could not and did not offer a valid clear title in lieu of foreclosure. The delays were not shown to be the result of bad faith or unfair dealing. Nor was there any evidence establishing that an obligation to enter into a workout agreement is stated within the underlying loan documents. SeeShawmut Bank Connecticut v. Chorches, Superior Court, judicial district of Tolland, Docket No., CV 95 57587 (Sept. 8, 1995, Hammer, J.)
The Thompsons also contest the valuation of the property. At the hearing, the plaintiff presented the testimony of Ms. Ann Cameron and her report as to the value of the property on the date title vested in plaintiff. She testified that she is, and has been, a licensed real estate appraiser for some 20 years. She is a local appraiser. She placed a fair market value of $140,000 on the property, which is her determination of the value based upon a market analysis.
She utilized 3 comparable sales in her market approach analysis, the closest in time and size of which was comparable # 3. However, that comparable was in New Britain, not Berlin. Her comparables were all 1997 sales, with # 3 being within 4 days of the title vesting date. 2 of the 3 comparables were approximately 1 mile or less from the property. The comparables had, respectively, 4, 3 and 5 units.
The Thompsons did not call any appraiser or present any recent appraisal. However, based upon Ms. Cameron's testimony that the Berlin market has remained essentially stable for several years, they requested that the court take judicial notice that the appraisal submitted by the plaintiff's predecessor in December, 1995 furnished the basis of the initial fair market value finding. The December finding is a matter of record in this file as is the affidavit filed by plaintiff's predecessor setting forth that value. These defendants also requested the court take judicial notice of the appraisal which accompanied that affidavit and is in the file. Counsel for the plaintiff objected.
Normally the value of the property as of the time of the foreclosure orders would be immaterial. Eichman v. J J BuildingCo., 216 Conn. 443, 457, 582A.2d 182 (1990). However, Ms. Cameron's opinion as to the static nature of the Berlin market renders the 1995 appraisal relevant. Any hearsay objection is overcome by the admission exception to that doctrine. CT Page 13346
The court is vested with discretion as to the taking of judicial notice. De Luca v. Park Commissioners, 94 Conn. 7, 10,107 A. 611 (1919). The court may take such notice of the file in the pending case. Brockett v. Jensen, 154 Conn. 328, 336,225 A.2d 190 (1966). This court will take judicial notice as requested.
However, having examined the appraisal of December, 1995 the court is unpersuaded that it merits any appreciable weight in the court's deliberation. It is dated as of August 3, 1995 and prepared by a company located in Austin, Texas. The signatory bears a temporary Connecticut Certified General Real Estate Appraiser number and lists memberships in a number of Texas associations and no Connecticut ones. The market comparables date back to the first 1/2 of 1995 and are only 2 or 3 unit dwellings. None are closer than 2 miles to the property. And the court does not accept the premise that 1995 sales are of significant value in determining 1997 market value, notwithstanding Ms. Cameron's testimony.
The plaintiff has sustained its burden of proof to establish the valuation of the property on the date title vested in it. The court finds Ms. Cameron credible and her appraisal and testimony of significant worth. But the court, after full consideration of the testimony of Ms. Cameron, and careful review of her appraisal, also finds the value of the property on the date in question to be greater than that set forth in Ms. Cameron's appraisal. "In determining valuation pursuant to 49-14, the trier, as in other areas of the law, is not bound by the opinion of the expert witnesses . . . The referee could have rejected the appraisers' testimony in whole or in part regardless of [his] belief or nonbelief of the subordinate facts relating to [their opinions]."(internal citations and quotation omitted).New HavenSavings v. West Haven Sound Development, 190 Conn. 60,69-70,459 A.2d 999 (1983).
The court agrees with Ms. Cameron that a market analysis is the most appropriate measure of the value of this property. The court agrees with Ms. Cameron that a per unit value indicator is the most reliable indicator in calculating the market value of this property. However the court disagrees with her conclusion that $28,000 is a reasonable value per unit. Giving due weight to the various evidence, especially the data and components of the Cameron appraisal, the court finds the property's value as of September 11, 1997 to be $160,000. CT Page 13347
The court finds the interest from the date of judgment to title vesting to be $40,078.08, the costs on the original judgment are $828.62, the interest from the vesting date to the date of deficiency judgment is $30.89 per diem x 416 days or $12,850.24, the additional allowed attorney fees for this hearing is $350, the allowed appraiser's fee for this hearing is $1,000, for a subtotal of $286,945.20 The value at time of vesting is found to be $160,000. Accordingly a deficiency judgment may issue against Gregory and Rosemary Thompson in the amount of $126,945.20.
James T. Graham Superior Court Judge